# WILLIAM G. HUEY v. AUGUST GAHLENBECK.

ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF PHILADEL-
PHIA COUNTY.

Argued March 28, 1888—Decided October 1, 1888.

1. One who is injured when lawfully upon the premises of another, but does not show either the direct cause of the injury or that it occurred through the negligence of the defendant, is not entitled to recover damages for the injury.

2. The plaintiff was lawfully in the warehouse of the defendant when something came down and struck him, causing his fall into the well of an elevator; there being no proof of the cause of the injury or of negligence on the part of the defendant, it was error to refuse instructions to find for the defendant: Lake Shore etc. R. Co. v. Rosenzweig, 113 Pa. 519, impaired and restricted to its facts.

Before GORDON, C. J., PAXSON, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, aud STERRETT, JJ., absent.

No. 244 January Term 1888, Sup. Ct.; court below, No. 255 March Term 1886, C. P. No. 1.

On March 31, 1886, an action in case was begun by August Gahlenbeck against William G. Huey, to recover damages for personal injuries received. The declaration set out that the defendant was the owner or lessee of premises Nos. 1916 and 1918 Market, where he carried on the business of storing goods for the public for hire and reward; that it was his duty to observe due care in piling, keeping and maintaining said goods and not to permit the same to be unsafe or dangerous to the owners thereof in going to and from the same at the invitation of the defendant; that, notwithstanding, he had so carelessly piled, kept and maintained said goods, and permitted them to be so unsafe and dangerous, that by reason thereof, when the plaintiff was in the store-room at the invitation of the defendant and to get his goods stored there, a box or package of goods fell upon him and he was injured. The plea was, not guilty.

At the trial on October 5, 1887, it appeared that in 1885 the plaintiff had a number of packages of goods stored on the

ground-floor of the defendant's warehouse. An elevator descended into a cellar through this floor, with a well eight by fourteen feet in diameter, guarded on three sides, but unguarded at the side where the packages were piled about eighteen inches therefrom. On August 10, 1885, the plaintiff called at the warehouse for a trunk, stored there with his other goods. At the request of defendant he walked back to point out his trunk and on his way was warned to take care of the elevator. He saw the elevator, and, being called in his own behalf, testified: " I saw the elevator when I went into the back part of the place, and when I got near to the elevator something came down and struck me and scraped my face, and I fell down upon my back. Q. Did you know anything about that before? A. No, sir. It struck me on the head. Q. What did it do? A. It cut me and broke the bone in my nose. I don't know whether it broke my leg. . . . . . Q. What was the result when it knocked you down? A. I must have lost consciousness. . . . . . Q. Could you see anything coming down on your head before it struck you? A. No, sir. Q. Did you see anything about there that was likely to fall upon you? A. No, sir. Q. And you had no notice of it until it struck you? A. None whatever. . . . . . Q. You have said that something heavy struck you. A. Yes, sir. Q. Where did it strike you? A. Here (indicating), feel my nose. It is all crushed. Q. Is there any scar on your head? A. I cannot see up there. Q. You can feel, can't you? A. I can't feel any. . . . . . Q. Are you sure that something fell on you, or did you fall down yourself? A. I am sure that something fell on me. Q. How can you be so sure that something fell on you when you cannot remember the other things that happened? A. Something struck me and I got blinded and I know that I fell back and that I knew no more. . . . . . Q. You fell on your back? A. Yes, sir. Q. Now you are sure of that? A. Yes, sir. Q. And the broken nose and the blow on your head came from the falling of some weight on you? A. Yes, sir, and it broke my nose and cut my eye."

On the part of the defendant it was shown that while an employee was looking for the trunk, he turned to call the plaintiff and found he had fallen down the elevator well and was injured; that no boxes or packages were out of their

places, either on the floor where they had been stored or upon the cellar floor below.

The court, BIDDLE, J. charged the jury and answered the defendant's points, as follows:

The law of this case, which is the part of the case for which I am responsible, is very simply and very easily stated. The application of the law to the facts is, perhaps, a little more difficult, but it is that portion which you will have to perform to the best of your ability.

This action is one in which it is alleged that the plaintiff was injured by reason of the negligence of the defendant, and, of course, therefore, before he can recover he must first satisfy you that the injury which he has sustained was really brought about by the negligence of the defendant. . . . .

Now, you must first ask yourselves what negligence has been committed by the defendant? [The statement of the plaintiff himself was that he had a certain quantity of goods stored in the warehouse of the defendant, on Market street; that he wanted something which was in one of his trunks; that he went to the office of the establishment; that when he got there there was no one in the office. He did not attempt himself to go into the warehouse, but waited until the son of the superintendent of the warehouse came into the office. Having stated to him the object of his calling, the young man sounded a gong connected with the fourth story of the establishment to call his father. The father came down and, after being informed of the object of Gahlenbeck's visit, he directed Gahlenbeck to accompany his son William Huey, stating that he would take him to the place where the trunks were and that he, Gahlenbeck, could then point out which trunk he wanted and it would be delivered to him. In accordance with that direction, Gahlenbeck alleges that he did follow the son, and he also testified that after following him for some distance something fell down upon his head and upon his face and knocked him insensible.

Now, that is the precise statement of the plaintiff as to the way in which the injury came about. If you believe that to be the case, I think, legally, the defendant would be responsible. He did not go into this place without being first invited.

He was directed to follow this young man, William Huey, and if he was so invited and did follow him, under that direction, he had a perfect right to believe that it was a safe place for him to go, and that his going there was not to be attended by any danger; and if, after going in there at their invitation, he met with an accident, caused by reason of something falling upon him, by reason of any of the packages or boxes being improperly placed there, which caused them to fall down, I say if that were true, then the defendant would be responsible.] [1]

The answer of the defendant to this case is, of course, not that the man was not hurt or injured, but the allegation is that nothing at all fell upon him; that it was impossible for anything to fall upon him; and a number of witnesses have testified that the goods or packages or boxes in the particular vicinity of the accident remained in exactly the same condition as they were before the accident, and that there was no evidence that they had been disturbed.

William Huey, the young man who accompanied Gahlenbeck back into the warehouse, told us that he went with him by the direction of his father, and that as they approached the rail of the elevator he told the plaintiff "to stand there and he would go to where the trunks were, and that when he, Huey, got there he, Gahlenbeck, could indicate to him which trunk he wanted." William Huey says that he left the plaintiff standing at that place and then pursued his own way to where the trunks were; that in getting in front of where the trunks were he turned his back to the plaintiff, and then when he got there he turned around to look to where he had stationed the plaintiff, and where he still supposed him to be, and called to him, and, receiving no answer or reply, he turned to look around and he was not where he had left him; that he finally found him lying on the floor of the cellar, having apparently fallen down through the hatchway; that they then went down and picked him up and brought him up to the office.

[Now, the allegation of the defendant is that in some way the plaintiff fell down the hatchway, but the plaintiff himself positively denies this.] [2]  If the plaintiff did injure himself by falling down the hatchway, then I do not see how the defendant could be held responsible for the injury, because the plaintiff already knew all about the elevator being there.  You will

recollect that the plaintiff, in his testimony, says, "I was invited to go back in the building with him and point out the trunk. I followed him; nothing particularly occurred. I saw the elevator when I went in. I saw the elevator when I went into the back part of the place, and when I got near to the elevator something came down and struck me and scraped down my face and I fell on my back." He was asked "Did you know anything about that before?" and he answered "No, sir. It struck me on the head." Then he was asked "What did it do?" and he said "It cut me and broke the bone in my nose; I do not know whether it broke my leg, but on the next day, Tuesday, 11th, I found myself in the hospital and I had my head cut open when I came to consciousness." Then, again he was asked, "Did you see the elevator hole?" and he replied, "I did see the elevator, but I did not look down the hole." He was asked "Did you see the space or hole?" and he answered "Yes." He was then asked, "Where were you standing then?" and he replied "I was on this side, and perhaps I did go around there, but when I was on the south side I wanted to say that I was south of the elevator." He was asked "Do you mean to say that you followed Mr. Huey through a passage-way where goods were piled on both sides of it?" and he answered "I was too busy and had my head full of other things and I did not think enough of it to commit to memory all that I saw or all that I could have seen there." He says, "I am sure that something fell on me." And then he was asked, "How can you be so sure that something fell on you when you cannot remember the other things that happened?" and he replied "Something struck me and I got blinded and I know that I fell back and that I knew no more. It broke my nose." So that he attributes the injury to the fact of something having fallen down upon him; but if it is true that instead of that, instead of something falling upon him, he fell down the elevator hole, I cannot see that that could be attributable to the negligence of the defendant, because the plaintiff knew all about the elevator being there, and if a man sees a thing which is likely to be a source of danger and does not guard against it, then he is negligent himself. There seems to have been abundance of light about the place; it was between nine and ten o'clock in the morn-

ing, and if the danger was easily seen and the man did see it, and, notwithstanding that, he tumbled down a hole like, then, it is his own carelessness. [If you believe as I have said, that it was caused in such a way as he says it was, that it was caused by something falling on him and striking him upon the head, through the careless handling of the goods, then the defendant would be responsible]; [3] but if he knew that the hole was there and he fell down it, then I do not see how you could attribute the fault to the defendant.

If you feel satisfied that the negligence of the defendant has been fully established in this case, and that there was no negligence on the part of the plaintiff himself, then, you should consider the amount of damages to which the plaintiff is entitled. The measure of damages has been correctly stated to you already; he should be compensated for the pain and suffering he has endured: for the pecuniary loss he has sustained and which is likely to continue to be sustained: for the expense to which he has been put, and for the crippled condition in which he has been left by reason of this accident.

Under our system, counsel have the right to ask me to charge the jury specifically upon the points of law. I have, I think, covered everything, but I will read the points handed me by counsel for the defendant:

1. It is the duty of the plaintiff seeking to recover, where the gravamen of the action is the alleged negligence of the defendant, to show the case clear of contributory negligence on his own part. The plaintiff has failed to show such a case, and your verdict should be for the defendant.

Answer: My answer to that is, that the plaintiff, seeking to recover, should show negligence on the part of the defendant, but if it appears from the evidence that he himself was guilty of negligence, that would prevent his recovering.[4]

2. The plaintiff knew of the existence of the elevator-well, and he approached it at his own peril. If the jury find that he fell down the well, he contributed to the accident and cannot recover against the defendant.

Answer: If he knew it was there and he fell down it, I do not then see that there was any want of care on the part of the defendant.

3. The absence of the guard on the left side of the well, in

Arguments.

front of the place where the plaintiff's goods were stored, is not negligence on the part of the defendant, so far as the plaintiff is concerned, as he knew of the existence of the elevator and approached it at his peril.

Answer: That is true. The object in putting up the guard is to notify persons that danger exists.

4. If the jury find that the plaintiff fell down the elevator-well, the verdict should be for the defendant.

Answer: I have already said that I do not know of any evidence which would justify you in bringing in a verdict for the plaintiff, if he fell down the elevator-well, the existence of which he was already aware of.

5. Under the facts proved in this case the verdict should be for the defendant.

Answer: This last point, I refuse to so charge. I decline to direct a verdict for the defendant generally.[5]

The verdict of the jury was in favor of the plaintiff for $2,000. A rule for a new trial having been discharged, judgment was entered upon the verdict, when the defendant took this writ. The errors assigned were:

1–3. The parts of the charge embraced in [ ] [1 to 3]

4. The answer to defendant's 1st point.[4]

5. The answer to defendant's 5th point.[5]

*Mr. Walter J. Budd* and *Mr. John G. Johnson*, for the plaintiff in error:

Facts were assumed in the charge as being before the jury, of which there had been no proof: that packages or boxes had been improperly placed, that packages or boxes had fallen down, and that there had been careless handling of the goods. Is negligence proven against any one by evidence that something fell upon a person who went into a warehouse stored with goods, in the absence of proof of what fell, when it fell, and how it came to fall? We must not be misled by the requirement of railroad companies, sued by passengers for injuries, where the action is upon a contract for safe carriage, and the cause of the injury is impossible of ascertainment by the injured persons. Even in such a case, this court has shown its disposition to keep the rule within bounds: Federal St. etc. Ry. Co. v. Gibson, 96 Pa. 83. But in a case such as the pre-

sent, even if the plaintiff were hurt by something which fell upon him, there must be evidence of negligence on the part of the defendant: Wharton on Neg., § 844; Losee v. Buchanan, 51 N. Y. 485; Case v. Railroad Co., 64 Ia. 762; Cotton v. Wood, 8 C. B., N. S., 568; Higgs v. Maynard, 12 Jur., N. S., 705; Stager v. Ridge Ave. Ry. Co., 119 Pa. 70; Gramlich v. Wurst, 86 Pa. 79; MacLean v. Burnham, 19 W. N. 54.

*Mr. A. S. L. Shields*, for the defendant in error:

1. It is a mistake to suppose that negligence can be proved only by positive affirmative evidence. There may be no direct proof of negligence, yet the way in which the injury is done may be such that negligence is the most probable hypothesis by which it can be explained; and, when this is so, the defendant must disprove negligence by showing that he exercised due care: Wharton on Neg., § 871, p. 734. In Lake Shore etc. R. Co. v. Rosenzweig, 113 Pa. 535, Mr. Justice TRUNKEY said: "If he was knocked down by a blow in his rear which rendered him unconscious, it does not follow that because he cannot tell what struck him, the jury may not find the fact that his injury was the direct consequence of a particular act. It is probable that the jury inferred that one of the things which made the place dangerous struck him." Negligence is always a question for the jury when there is any doubt as to the facts or the inferences to be drawn from them: Johnson v. Bruner, 61 Pa. 58.

2. The case at bar is not without precedent. A case nearly like it is Scott v. Dock Co., 3 Hurlst. & C. 596, wherein it was held: "Where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from lack of care." The same principle was decided in Briggs v. Oliver, 4 Hurlst. & C. 403; Byrne v. Boadle, 2 Hurlst. & C. 722; Kearney v. Railway Co., L. R. 6 Q. B. 759; Gagg v. Vetter, 41 Ind. 228; Garrett v. Railroad Co., 36 Ia. 121; Smith on Neg., § 129 et seq.; Shear. & Redf. on Neg., 3d ed., § 499.

3. If a person allow a dangerous place to exist in premises

occupied by him, he will be personally responsible for injury caused thereby to any other person entering upon the premises by his invitation or procurement, express or implied, if the person injured is in the use of due care: Coomb v. New Bedford Cord Co., 102 Mass. 572; Sweeny v. Old Colony etc. R. Co., 10 Allen 368; Elliott v. Pray, 10 Allen 378; Zoebeich v. Tarbell, 10 Allen 385. The cases cited by the defendant are distinguishable.

OPINION, MR. JUSTICE PAXSON:

The fifth assignment of error raises the only question I propose to discuss in this case. The defendant's fifth point called upon the court to instruct the jury that "under the facts proved in this case the verdict should be for the defendant." The court refused to affirm this point. The result was a verdict against the defendant for $2,000 without a particle of proof to convict him of negligence.

The defendant below had a place of business where merchandise and other property is received for storage purposes. The plaintiff had a number of boxes and trunks there on storage. On the morning of August 10, 1885, the plaintiff called at said warehouse to get one of his trunks. He was invited into the warehouse to point it out. He followed William H. Huey, a clerk of defendant, into the warehouse for that purpose. Whilst so engaged the plaintiff fell down the elevator hole into the cellar and was injured. About this there can be no dispute as he was found there in an injured state and taken to the German Hospital. If this were all, the plaintiff would have no cause of action, as he knew of the elevator and could and should have avoided it. But the plaintiff alleges, and so testified upon the trial below, that he was injured by something falling upon him. He said: "I saw the elevator when I went into the back part of the place, and when I got near to the elevator something came down and struck me and scraped my face and I fell down upon my back." The witness was not able to say what it was that struck him; he did not see anything nor did any other witness notice an article of any kind in the building out of place. There was no evidence that the boxes and parcels, with which the place was filled, had not been piled up with proper care, or that any one of them had

fallen down. There was not a scintilla of proof that the defendant had been guilty of any negligence; there was absolutely nothing beyond the fact that the plaintiff was lawfully in the defendant's store, and while there, was injured by something, which no witness saw or could describe, falling upon him. Was this sufficient to convict the defendant of negligence?

I do not understand that when A. is lawfully upon the premises of B., for business purposes or otherwise, that B. is absolutely liable as a guarantor for the safety of A. If an accident occurs to the latter under such circumstances, without negligence on the part of B., I am unable to see how under any rational rule of law B. is to be held responsible.

The case of Scott v. Dock Company, 3 Hurlst. & C. 596, cited in Wharton on Negligence, at page 701, and relied upon by the plaintiff below, differs from this in an essential particular. In that case a custom-house officer, visiting a store upon his lawful business, was injured by the fall of sugar bags from a loft over a door on the defendant's premises. No explanation was given of the cause of the occurrence. The fact was, however, held evidence of negligence, "as such a passage-way should be guarded from casualties that could be prevented by due care." It will be observed that in the case cited the plaintiff was injured by a bag of sugar falling upon him. If the plaintiff in this case had been struck by one of the boxes piled up in the store falling upon him, we would have no hesitation in saying that it was evidence that the boxes had been piled negligently. Just here is the pinch of the plaintiff's case. He cannot say what struck him. It may have been the act of some one not in the employ of defendant; possibly a mere trespasser on the premises. The like criticism may be made of the case of Briggs v. Oliver, 4 Hurlst. & C. 403, and others cited by defendant in error. The nearest approach to the case in hand is Lake Shore Railroad Company v. Rosenzweig, 113 Pa. 519. In that case the plaintiff could not say what struck him; he could describe certain things around him which might have done so, and he was allowed to recover a verdict of $48,750. That case certainly went much further than any other in this country or in England, in the line of allowing a recovery without evidence. It was heard in the

absence of two of the members of the court and those that sat were not unanimous. We are not disposed to go any further in that direction, or to follow it to the extreme length now asked of us, but we will allow it to stand upon its own facts. Aside from this case I know of no well-considered case that will sustain the one in hand. The mere fact that something fell on the plaintiff's head, without more, is not evidence of negligence on the part of the defendant. He cannot be convicted of negligence and compelled to pay a large sum of money without proof. We are not prepared to sustain the doctrine that the owner of property is liable for every injury that may occur to another therein or thereon, in the absence of any evidence that such injury was the result of the negligence of the owner. We are of opinion that the defendant's fifth point should have been affirmed.

Judgment reversed.