## Wright, Appellant, v. Pittsburgh Railways Co. et al.

Argued October 8, 1935. Before FRAZER, C. J., KEPHART, SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Charles G. Notari,* of *Marshall, Braun & Notari,* for appellant.

*William A. Challener,* with him *J. R. McNary,* for appellee.

OPINION BY MR. JUSTICE DREW, November 25, 1935:

Plaintiff instituted this action of trespass against the Pittsburgh Railways Company and the City of Pittsburgh to recover damages for personal injuries alleged to have been caused by the negligence of defendants. The jury found in favor of the City of Pittsburgh, but returned a verdict for plaintiff against the Pittsburgh Railways Company. Subsequently, judgment n. o. v. was entered for the company, and it is from this action of the court below that plaintiff appeals, assigning as error the entry of judgment in favor of the company.

On October 24, 1932, plaintiff was walking in a northerly direction along the sidewalk on the western side of Smithfield Street in the City of Pittsburgh. The hour was 11: 30 a. m., and the day was bright and clear. As she approached the intersection of Diamond Street with Smithfield Street the traffic light was green in her favor, and along with a number of other pedestrians plaintiff started to cross. The horn of an automobile about to turn into Diamond Street sounded, and plaintiff jumped forward. In so doing she stumbled over the first rail of the street car track and fell, sustaining the injuries upon which the present action is based.

The only question presented is whether plaintiff established her allegations of negligence on the part of the

company.  The evidence as disclosed by the record, viewed in the light most favorable to plaintiff, requires an answer in the negative.  At the place where the accident occurred there is a curve in the track, and the rail over which plaintiff tripped was a guard rail of the kind ordinarily used in such construction.  This type of rail is employed to protect against derailment of the street cars, and consists of a vertical guard on the inner side of the rail, in addition to the outer or running surface and the groove which accommodates the flange of the wheel. The guard is itself a part of the rail and its function is to guide and hold in place the flange of the wheel as it passes along the curve.  The particular guard in question was $7/8$ of an inch higher than the running surface of the rail.  It is not denied that this type of rail is widely used and approved, and, since its employment was not shown or even alleged to be negligence, its use could not be said to be a departure from the duty of ordinary care: Low v. Hbg. Rys. Co., 290 Pa. 365.  All of the witnesses are agreed that it was some part of the rail over which plaintiff stumbled and fell.  The contention of the company, which is based on plaintiff's own evidence, is that plaintiff tripped over the guard.  If this be true there could be no liability, in view of the fact that there is no evidence that the guard was defective. The only clear testimony of those who professed to have seen her foot actually come in contact with the rail is to the effect that it was the guard over which she stumbled.  In this view of the accident the action of the court below was entirely proper.

One witness who testified that plaintiff stumbled over the guard later in his examination said that it was "at the bottom of the rail" that she caught her foot.  It was further testified that the paving along the outside of the rail had subsided and that the depth of the depression varied from one and a half to two or three inches.  There is no evidence that the actual base of the rail had become exposed.  In using the expression "bottom of the rail"

the witness must have meant the edge of the running surface. . This is the most favorable view possible; but even if this be the proper interpretation of his testimony there is still no evidence of negligence. The testimony of this particular witness, as well as all of plaintiff's other witnesses, with respect to the depressed condition of the paving and the varying depth thereof, consisted entirely of conjectural estimates. It is unnecessary to decide whether, even if believed, their testimony would be sufficient proof of negligence. The plain fact is that uncertain estimates, of the sort offered by plaintiff, cannot prevail over actual measurements, such as were produced by defendant: McIntyre v. City of Pittsburgh, 238 Pa. 524; Chapman v. Clothier, 274 Pa. 394; Lunzer v. Pgh. & Lake Erie R. R. Co., 296 Pa. 393; Jones v. City of Detroit, 171 Mich. 608; Brown v. Detroit United Ry., 216 Mich. 582; Lalor v. City of New York, 208 N. Y. 431; Trudnowski v. N. Y. Central R. R. Co., 220 App. Div. 503. This is not a case in which it was impossible for plaintiff to produce accurate measurements. The dangerous condition which plaintiff alleges existed at the time of her injury was susceptible of actual measurement, and, since it was within her power to do so, there was a duty imposed upon her to place such measurements before the jury: Rothchild v. Central R. R. of N. J., 163 Pa. 49. Having failed to perform that clear duty, she could not at the trial substitute conjecture for certainty. A civil engineer employed by the company took accurate measurements promptly after the occurrence of the accident, and he testified that the subsidence of the paving alongside the rail at the place where plaintiff is said to have stumbled did not exceed a quarter of an inch. Plainly, the company's acquiescence in this condition could not of itself be sufficient to support a charge of negligence.

Whether plaintiff tripped over the guard, as the only clear testimony in the case indicated, or whether she tripped over the edge of the running surface of the rail,

it is manifest there was a complete failure to establish the charge of neglect on the part of the company.

Judgment affirmed.