## Oberheim et vir *v.* Pennsylvania Sports and Enterprises, Inc., Appellant.

Argued September 30, 1947. Before MAXEY, C. J.,
DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*James J. Burns, Jr.,* for appellant.

*Charles C. Arensberg,* with him *Patterson, Crawford, Arensberg & Dunn,* for appellees.

OPINION BY MR. JUSTICE JONES, November 24, 1947:

These appeals are from separate judgments for the wife-plaintiff and her husband for damages because of injury to the wife through the alleged negligence of the defendant company in its operation of an ice skating rink. The injury was the result of a fall by the wife while attempting to pass from the board flooring of a passageway onto the entrance to the skating area of the rink. The negligence charged was the unsafe condition of the course necessarily to be trodden by the patron plaintiff. The jury returned verdicts for the plaintiffs in respective amounts which are not now questioned. The defendant's motions for judgment n. o. v. and for a new trial were refused by the court en banc; and from the judgments entered on the verdicts the defendant brings these appeals, contending (1) that the evidence is insufficient to support a finding of defendant's negligence as the cause of the injury and (2) that the wife-plaintiff was guilty of contributory negligence as a matter of law. The facts and inferences (favorable to the verdicts) by which we are bound upon testing the merit of the motions for judgments n. o. v. reveal the following set of circumstances.

On the afternoon of December 4, 1944, Mrs. Oberheim, the wife-plaintiff, went to the Duquesne Gardens in Pittsburgh to skate on the rink operated there by the defendant, Pennsylvania Sports and Enterprises, Inc. She paid the required admission fee and went to the dressing room where she garbed herself for skating, including skates on her feet. She descended to the rink about 3:30 P.M. and took a skating lesson from an instructress, Miss Hamm, an employee of the Pittsburgh Figure Skating Club. The instructress was giving les-

sons to any of the public patrons of the rink who so desired. Upon finishing the lesson at 4:30 P.M., Mrs. Oberheim left the rink and retired to the dressing room. About 5:50 P.M. she started to re-enter the rink and, to that end, descended the wooden ramp leading from the dressing room down to a board flooring or platform which abutted the entranceway to the rink, the particular entrance being the only one in use at the time. On this trip from the dressing room to the rink, Mrs. Oberheim was accompanied by a woman friend who preceded her. There was a handrailing along the end of the platform. At the time in question, however, hockey equipment had been left leaning against the railing and, because of the presence of the equipment, the railing could not be used for support by those entering or leaving the areaway. Mrs. Oberheim endeavored to steady herself before stepping down from the platform to the entranceway by holding on to the hockey equipment, but it was heavy and teetering and, when she touched it with her hand, it wobbled. The equipment was so placed that it extended past the end of the railing, thus requiring Mrs. Oberheim to walk around it in order to traverse the short distance of the entranceway between the platform and the rink. After skirting the hockey equipment, she stepped down from the platform to the entranceway. As she did so, her left skate caught in a pocket or ridge of ice, causing her to twist around and fall. Thereby, she sustained the serious injuries involved in these suits.

The pocket or ridge of ice, which tripped Mrs. Oberheim, had been formed by the freezing of ice scrapings which, mixed with dirt, paper and cigarette butts, had been pushed there by attendants when the ice of the rink proper had been cleaned and dressed for skating. The frozen condition of the scrapings in the entranceway was notably worse at the time of Mrs. Oberheim's accident than it had been upon her previous trip to and from the rink. Apparently, the condition had become

dangerous between 4:30 P.M. and 5:45 P.M. Witnesses for the plaintiff testified that the condition was worse then than ordinarily; there was evidence that employees of the defendant customarily pushed the ice scrapings into the areaway upon cleaning the ice; and, according to the defendant's manager, the ice was scraped, cleaned and dressed, in ordinary course, just prior to the 6 P.M. session. There was also testimony that the lighting was poor, and it was conceded that the full lighting capacity of the arena was not turned on at the time of Mrs. Oberheim's accident.

The appellant's contention that the evidence of the defendant's negligence was insufficient to warrant submission of the case to the jury is without merit and may justly be disposed of without extended discussion. As the operator of the rink for paid admissions, the defendant company was under a legal duty to keep the premises in a reasonably safe and suitable condition so that those coming upon them at the defendant's invitation, express or implied, would not be unnecessarily or unreasonably exposed to danger: *Robb v. Niles-Bement-Pond Co., Inc.*, 269 Pa. 298, 300, 112 A. 459; *Chapman v. Clothier*, 274 Pa. 394, 396, 118 A. 356. The logical corollary is that an occupier of property in such circumstances is not liable for injuries sustained thereon by his invitees except upon proof of his causative fault: *Huey v. Gahlenbeck*, 121 Pa. 238, 248, 15 A. 520. The actionable negligence chargeable to the defendant in the instant case, however, does not arise from any condition of the skating area of the rink but from the dangerous condition of the entranceway made so by the congealed pile of ice scrapings and litter. The jury presumably found, and the evidence well justified the finding, that the condition thus created and permitted by the defendant or its employees to exist rendered the means of ingress and egress to the rink unsafe and thereby unnecessarily exposed the wife-plaintiff to the risk which resulted in her injury.

It is, of course, true, as the appellant contends, that where artificial or natural conditions interpose on an owner's or occupier's premises to subject an invitee to unnecessary risk of harm, timely notice of the existence of the dangerous condition is ordinarily required as the basis of a finding of a breach of duty on the part of the owner or occupier of the property. But that rule is not applicable to the situation here disclosed. This is not one of the type of cases frequently met with where foreign substances, wholly unconnected with or unrelated to a floor, suddenly appear thereon with risk to passing patrons. Here the irregular ice pocket or ridge in the entranceway was a likely and foreseeable result of the manner in which the rink and the passageway were being maintained to the knowledge of the defendant or, at least, to the knowledge of responsible employees. Direct proof of the defendant's knowledge or opportunity to know of the negligent condition was not, therefore, essential to the imposition of liability on the defendant. Such knowledge necessarily attached to the defendant because of the anticipatable growth and presence of the congealing ice scrapings improperly left in the entranceway.

The question of the wife-plaintiff's alleged contributory negligence was clearly a matter for the jury. It is, of course, quite possible that she did not actually exercise the degree of care for her own safety which the law required, but whether or not she did so was for the jury to determine in the light of all the surrounding circumstances, e. g., the dim lighting, the cluttered and consequently unavailable handrailing, which she had attempted to use, and the recent formation of the negligently existing ice pocket or ridge whose dangerous presence was not as observable, when looked down upon at the vertical, as it might otherwise have been. The mere fact that Mrs. Oberheim may have known that an irregular and rough area existed where she was attempting to pass does not convict her of contributory

negligence as a matter of law. What was said in *Steck v. City of Allegheny,* 213 Pa. 573, 576, 62 A. 1115, is peculiarly apposite, viz., ". . . when the testimony shows a defect of such character that the [premises] can be used with safety by the exercise of reasonable care notwithstanding its defective condition, it is not for the court, but for the jury, to determine whether the injured party performed the duty required of him under the circumstances". Certainly, the wife-plaintiff's contributory negligence did not appear with the clearness required before the court could declare her culpably negligent as a matter of law: see *Scholl v. Philadelphia Suburban Transportation Company,* 356 Pa. 217, 224, 51 A. 2d 732.

The appellant's contention that Mrs. Oberheim voluntarily assumed the risk of injury and is therefore barred from recovery is equally without merit. It will readily be conceded that an invitee of an ice skating rink assumes the ordinary risks incidental to the sport, such as the risk of injury from falling because of imperfections and inequalities on the surface of the ice reasonably to be anticipated: see *McCullough v. Omaha Coliseum Corporation,* 12 N.W. 2d 639, 643, 144 Neb. 92. But, the invitee is not to be held to have assumed risks arising beyond the skating area from dangerous conditions of entrance and exit originating from other than the ordinary and foreseeable possible effects of skating on the ice. Here, likewise, the fact that Mrs. Oberheim may have known that an irregular and rough area existed in the passage way to the rink does not impel a legal conclusion that she assumed the risk of her injury: cf. *Steck v. City of Allegheny,* supra.

As to the appellant's further contention that the testimony of the wife-plaintiff and her witnesses was so inconsistent as to amount to a failure of proof, little need be said. The cited variations, inconsistencies and contradictions were not other than what a jury is frequently called upon to reconcile or resolve, especially on issues of contributory negligence: see *Lemak v. Pittsburgh,* 147 Pa. Superior Ct. 62, 66, 23 A. 2d 354.

The appellant's principal argument in support of its claim to a new trial is that the Pittsburgh Figure Skating Club through the person of its instructress, Miss Hamm, and not the defendant company, was in charge of the rink at the time of the accident. The question of control was properly and fairly submitted to the jury whose apparent finding that the defendant was responsible for the maintenance of the ice and the entranceway leading thereto at the critical time is fully supported by the evidence. The further argument advanced by the appellant in support of its new trial motions, that it did not have timely notice or knowledge of the defective condition, is immaterial as appears from our earlier discussion of that point on the question of the defendant's negligence in connection with its motions for judgments n. o. v.

The judgments are affirmed.