Dean *v.* Allegheny County, Appellant.

Argued November 15, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*John R. Walters, Jr.*, with him *Herbert Grigsby*, and *Pringle, Bredin, Thomson, Rhodes & Grigsby*, for appellant.

*Thomas Hollander*, with him *Evans, Ivory & Evans*, for appellee.

OPINION BY WATKINS, J., March 23, 1967:

This is an appeal by the County from the judgment of the Court of Common Pleas of Allegheny County entered on a jury verdict in favor of Walter W. Dean, the plaintiff-appellee, and against the County of Allegheny and Steel City Refrigeration Company, the defendants, in the amount of $5000; and from the denial of motions for judgment n.o.v. and for a new trial.

On March 19, 1962, the appellee, an experienced skater, paid admission, rented skates, and entered the outdoor ice skating rink located in Allegheny County's South Park. The rink was owned and operated by the county. He began to skate and struck a soft spot in the ice which caused him to fall "quick" and "hard". He stated that "the soft spot in the ice caused me to

fall". As he pulled himself up he felt the "soft, mushy, wet" spot in the ice. His hand and knee sank into it. As a result of the fall he fractured his right arm and dislocated his right shoulder.

There was no barrier or warning concerning the alleged defect in the ice. One of the witnesses testified that ever since the rink opened a defect existed in the ice-making machinery which caused repeated recurrence of soft spots in the skating surface. It had not been corrected. This was especially evident in the spring months. At times, skating sessions were cancelled because such a large area was affected.

There was conflicting testimony as to the exact location of the soft spot that caused the appellee to fall. The appellee testified that when he entered the rink he began skating to his right and had proceeded fifteen to twenty feet when he fell. Another witness testified that the soft spot was approximately twenty-five feet from where the skaters go on the ice. The ice foreman of the rink testified that it was forty-one feet from the edge of the rink. The court below succinctly stated the issue as follows:

"Stated briefly, the plaintiff's case is that he fell on soft ice in an area of the rink which had a past history of being soft at certain times. The evidence submitted by the plaintiff supports his claim. In an attempt to disprove the allegations and proof offered by the plaintiff, the defendant offered testimony from Mr. Verno that the ice would only get soft when the temperatures rose substantially higher than they did on the day of the accident; that the recorded temperature of the brine was very low on March 9, 1962, indicating the ice was very hard; and that the accident happened after many skaters had shaved the ice with their skates, creating 'snow' which would have felt soft to the touch. The defendant also offered additional testimony that a person on skates usually slips or slides forward

while falling and therefore plaintiff could not have known the condition of the ice at his feet; that it was 75 feet from where the plaintiff came on the ice to the bad spot; and that George Lipchik, the head guard, had inspected the ice on March 9, 1962, and had not noticed the soft spot.

"The conflict in the evidence is obvious. The issues were submitted to the jury and were resolved in favor of the plaintiff. As noted above all inferences and doubts are to be resolved in favor of the verdict winner, and it remains to view the testimony in this manner and to determine if the plaintiff has made out a prima facie case."

The appellant contends that the evidence of the continued recurring of soft spots in the ice due to the defect in the freezing equipment was improperly admitted into the evidence because there was no evidence that the soft spot existed at the time of the accident. The appellee testified clearly as to its existence, its location and having seen and felt it and that his hand and knee sank into it.

In *Oberheim v. Pa. Sports and Enterprises*, 358 Pa. 62, at page 66, 55 A. 2d 766 (1947), the Supreme Court said in allowing recovery in an ice rink accident: ". . . As the operator of the rink for paid admissions, the defendant company was under a legal duty to keep the premises in a reasonably safe and suitable condition so that those coming upon them at the defendant's invitation, express or implied, would not be unnecessarily or unreasonably exposed to danger: Robb v. Niles-Bement-Pond Co., Inc., 269 Pa. 298, 300, 112 A. 459; Chapman v. Clothier, 274 Pa. 394, 396, 118 A. 356. The logical corollary is that an occupier of property in such circumstances is not liable for injuries sustained thereon by his invitees except upon proof of his causative fault. Huey v. Gahlenbeck, 121 Pa. 238, 248, 15 A. 520 . . . Here the irregular ice pocket or ridge in the entrance-

way was a likely and foreseeable result of the manner in which the rink and the passageway were being maintained to the knowledge of the defendant or, at least, to the knowledge of responsible employees. Direct proof of the defendant's knowledge or opportunity to know of the negligent condition was not, therefore, essential to the imposition of liability on the defendant. Such knowledge necessarily attached to the defendant because of the anticipatable growth and presence of the congealing ice scrapings improperly left in the entranceway."

The argument of the appellant as to temperature on the day of the accident is well answered by the appellee. "It intends this Court to conclude that on a day when the temperature has reached 35 degrees, a couple of hours of 32-degrees weather subsequently will cause surface waters to freeze. This is neither physically true, nor is it supported by the evidence. It takes a longer period of time to freeze ice cubes in the freezer compartment of a refrigerator. Moreover, appellee testified that the roads were wet as he drove to the skating rink the night of the accident. The accident occurred soon after he arrived."

The dangerous condition which caused the fall was not susceptible of actual measurement nor was it within appellee's power to measure it. The condition existed on premises owned and controlled by the appellant under circumstances that it would make it imprudent, if not impossible, to obtain the exact measurements. The condition to be measured was not always present and did not always occur at the same location on the rink and the rink itself was closed for skating purposes at the end of March. In this case we are not faced with a static condition such as a hole in the street or sidewalk but are faced with changing ice conditions due to a refrigeration defect. *Wright v. Pittsburgh Rys. Co.,* 320 Pa. 40, 181 A. 476 (1935).

The law is that where measurements are material and such measurements could have been made by appellee, uncertain or conjectural estimates made by the appellee's witnesses cannot prevail over actual measurements made by the appellant. The court below pointed this out by stating: ". . . Thus, two qualifications are made before the rule applies. The distance issue must be material and the measurement must be one which could have been made by the plaintiff.

"Concerning the first of these qualifications, the defendant's argument assumes the accident could have occurred at only one place on the ice surface which was 232 feet in length. The record does not sustain this assumption.

"Secondly, the defendant's argument would put a burden on the plaintiff of seeking access to the defendant's private property to make a measurement of a point which had undoubtedly changed in appearance due to the continued skating, cleaning and refreezing of the ice surface . . . ." There was sufficient evidence in this record to take it to the jury and the verdict should stand.

Judgment affirmed.

---

DISSENTING OPINION BY MONTGOMERY, J.:

I fail to find in this record any evidence of negligence on the part of the appellant-defendant, Allegheny County, creating the cause of plaintiff's fall. Admittedly, in the operation of this outdoor skating rink, one of the underlying pipes through which the freezing solution flowed did not function as well as the others, resulting in a softening of the ice in that area when the outside temperature arose above the freezing mark. However, there is absolutely no evidence that such a condition existed on the night of this accident. The only evidence as to the accident is that given by plaintiff, to the effect that shortly before 8:30 p.m., after

standing on the side line with his skates on, smoking and watching the skaters go by, he went on the ice and took several strides with the flow of skaters, counter-clockwise on the rink; that after traveling 15 to 20 feet his foot stopped and he fell straight forward on his right shoulder but did not slide on the ice; that as he pulled himself back up his hand touched the ice, the condition of which he described as soft, mostly wet, his hand sinking into it "to a certain extent. It wasn't like it would be like hard ice."

Plaintiff's witness, William Zader, described the troublesome condition, aforementioned, when it occurred, as being about one foot wide, 25 feet or more from the place where plaintiff entered the ice and extending across the rink. He also testified that the condition occurred when the outside temperature reached 38 or 40 degrees.

Plaintiff testified further that he watched the skaters pass over this entire area (where he fell) without mishap and that he was not aware of any softening condition of the ice thereabouts prior to the time he arose after his fall. It is also undisputed that the ice had been in use since 7:30 p.m. that evening and that an intermission was about to be called for the purpose of cleaning the fragments of ice, etc., which had accumulated thereon, in preparation for the second half of the session.

In order for the plaintiff to recover damages he must still prove by a fair preponderance of the evidence that the defendant's negligence was the proximate cause of his accident. *Steiner v. Pittsburgh Railways Company,* 415 Pa. 549, 204 A. 2d 254 (1964); *Markle v. Robert Hall Clothes,* 411 Pa. 282, 191 A. 2d 374 (1963). In my opinion he has not done so in this case. Too much was left to conjecture. Plaintiff might have fallen because his skate struck a ridge of accumulated ice shavings as he first indicated, or a paper or

other foreign object, or a cigarette butt which another skater had not placed in the receptacle wherein he had placed his cigarette, or from his own ineptness (he had just renewed his interest in ice skating after a ten or fifteen yearlong layoff therefrom), or for many other reasons which might be imagined.

The duty which the law places on the appellant was to use reasonable care for the safety of its patrons. It was not an insurer of the safety of its patrons. *Oberheim v. Pennsylvania Sports and Enterprises, Inc.*, 358 Pa. 62, 55 A. 2d 766 (1947). It is not unusual for skaters on ice to fall, or for the ice to erode from the contact of the skates with it, or for its degree of smoothness or hardness to vary with its use and the changing temperature of the atmosphere. Snowlike shavings, slush, and water are not unusual on artificially frozen ice.

I would enter judgment n.o.v. for the appellant-defendant on this record. Therefore, I respectfully dissent.

WRIGHT, J., joins in this dissenting opinion.