## Massman v. City of Philadelphia

*Lawrence J. Richette*, for plaintiff.

*Beryl E. Hoffman*, for defendant.

JAMIESON, P. J., December 11, 1967.—On September 28, 1961, plaintiff, Cecelia Massman, suffered injuries when she fell while walking through City Hall courtyard. Her action against the City of Philadelphia was tried before us without a jury. We found in her favor and awarded damages in the amount of $16,000. Before us now is plaintiff's motion for new trial on the ground of inadequacy of the verdict and defendant's motion for judgment n. o. v.

On the date in question, at about 5:30 p. m., plaintiff was walking from her place of employment at John Wanamaker's Department Store en route to Suburban Station where she intended to board a commuter train. Plaintiff followed her usual path through City Hall courtyard. Since it was rush hour, the courtyard, the very heart of the city, was extremely crowded. The depth and surge of the crowd was such that plaintiff was forced to the right side of the walkway near a stone retaining wall that was several feet high and parallel to the pathway. At the same time, the density of the crowd obstructed plaintiff's ability to observe the paving conditions. While thus walking, plaintiff's flat heel, about an inch high, caught in a piece of irregular, broken cement, causing her to fall. As a result, she suffered an intertrochanteric fracture of the right hip. The broken cement was about ½ inch deep and about 28 inches long, running parallel with and approximately two feet away from the retaining wall. The width of the break was irregular, being as little as several inches at its narrowest point and about one foot at its broadest.

Defendant raises only one issue, that the defect in the sidewalk was so minor, it was not actionable as a matter of law. In support of this position, the city re-

lies on Bosack v. Pittsburgh Railways Company, 410 Pa. 558 (1963).

"Time and again our courts have held that an elevation, a depression or an irregularity on a street or highway may be so trivial that courts, as a matter of law, are bound to hold that there was no negligence in permitting such depression or irregularity to exist. . . ." : Id. at page 563.[1]

Bosack does not hold, however, as defendant's argument suggests, that triviality is determined by the precise measurements of the irregularity in question. The thrust of that case is simply one of economic and physical practicality balanced against the need to protect against property damage and personal injury. Owners of large areas of land, such as railroads and municipalities, cannot reasonably be forced to police each and every square foot for minor depressions and protrusions.

"A railway company, not being an insurer, is required only to exercise reasonable care in maintaining the street areas which it has the duty of maintaining and repaving. The duty which the law imposes upon a railway in such a situation is not to keep the streets or highways *completely* free of *any* defect or irregularity but *reasonably* free of such irregularity or defect as would make likely an injury to a pedestrian crossing said street or highway. To hold otherwise would impose upon a railway an impossible, impractical and unjustifiable burden. . . ." : Id. at 563.

---

[1] Although the defendant in Bosack was a railroad and not a municipality, the case is none the less apposite because: "Such duty of maintenance and repair of the street on the part of the railway company is akin to the duty of a municipality to maintain and repair its streets and the liability of a railroad company to persons injured by defects in a street or highway is no higher nor greater than that which the law imposes upon the municipality itself . . .": Id. at page 562.

The test established in Bosack is that a paving defect is trivial when "it would be completely unreasonable, impractical and unjustifiable" to hold defendant liable for its existence: Id. at page 565. In that case, the irregularity was located 5 to 8 feet away from the ordinary pedestrian crossing, and consisted of several cobblestones over a width of 15 to 18 inches which had sunk 1 to 2 inches below an adjacent railroad track. We readily agree that it would indeed be an unjustifiable burden to hold a railroad liable for all minor cases of land subsidence not squarely on a public thoroughfare.

However, in the instant case, the defect was a crack, jagged and irregular and clearly discernible upon visual inspection. The crack was ½ inch deep, 6 inches at its widest point, and 28 inches long. In addition, it is difficult to conceive of a busier thoroughfare in Philadelphia than City Hall courtyard. Shoppers, tourists, businessmen and laborers tread this walkway at all hours of the day, and it is the focal point of the daily weekday exodus from center city at evening rush hour. Under these circumstances, it was for the trier of fact to determine whether or not defendant exercised reasonable care in maintaining the premises in safe condition. We cannot say as a matter of law that to require the City of Philadelphia to repair cracks of this size in the walking lanes of City Hall courtyard imposes an impractical and unjustifiable burden.

As the court said in Breskin v. 535 Fifth Avenue, 381 Pa. 461 (1955):

"What constitutes a defect sufficient to render the property owner liable must be determined in the light of the circumstances of the particular case, and 'except where the defect is obviously trivial, that question must be submitted to the jury'. . . . But 'there is a shadow zone where such question must be submitted to a jury whose duty it is to take into account all the

circumstances. To hold otherwise would result in the court ultimately fixing the dividing line to a fraction of an inch, a result which is absurd'. . . . No definite or mathematical rule can be laid down as to the depth or size of a sidewalk depression necessary to convict an owner of premises of negligence in permitting its continued existence. . . ."

In Breskin, the crack for which defendant was held liable was smaller in area and somewhat deeper than the crack in the instant case, and was located on the sidewalk of a major downtown thoroughfare. See also Henn v. Pittsburgh, 343 Pa. 256 (1941).

Accordingly, we conclude that defendant was negligent, and that the irregularity for which plaintiff seeks to hold defendant liable, when viewed in light of all the surrounding circumstances, was clearly not trivial.

Plaintiff's exceptions attack the adequacy of the $16,000 verdict.

Plaintiff was 61 years old at the time of the accident, September 28, 1961. She was hospitalized for about three weeks following surgery. The surgical process involved insertion of a nail into the fractured part of her right femur to hold the bone fragments together while the bone healed. This was performed by Dr. John J. Dowling, who charged a $300 fee. Plaintiff's postoperative recovery was excellent and she received a favorable prognosis from Dr. Dowling upon her discharge from the hospital.

Plaintiff did not return to work until April 2, 1962. Until that time, plaintiff employed a companion to take care of her household and personal needs at the cost of approximately $50 per week, for a total of $1,175. Transportation costs for her visits to Dr. Dowling totalled $40. Her hospital expenses were $721.16 and doctor bills to date of trial (most of which were incurred shortly after the accident) were $480. She

now sees a doctor in New York, where she presently resides, but only occasionally. Lastly, plaintiff has expended $342.08 for prescribed orthopedic shoes, which she still wears.

For a period of 3 to 4 weeks following release from the hospital, plaintiff was confined to a wheelchair. Thereafter, she used crutches until she returned to work. She now walks with a cane.

At the time of the accident, plaintiff was employed by John Wanamaker's at a salary of $10,000 per year, as an "operating manager executive" in charge of payroll.

Although plaintiff attempted to return to work, she testified that she was unable to move around with the facility her tasks demanded, and consequently retired voluntarily on July 26, 1962. Although most of plaintiff's work was done while seated, she often left her desk to obtain business files and salary books containing payroll sheets. Had she so ordered, however, any one of plaintiff's 20 subordinates could have obtained these items for her.

Between April 2, 1962, and July 26, 1962, plaintiff paid a friend $10 per week for transportation back and forth from work, because she felt too unstable on her feet to travel by commuter train.

While absent from her employment, plaintiff continued to receive weekly payments equal to her regular salary, aggregating about $5,000. Slightly less than one-third of this sum, about $60 per week, was paid by an insurance carrier[2] and the balance by John Wanamaker as a noncontractual and noncompulsory contribution. Consequently, plaintiff's damages are not diminished by the receipt of these payments: Kite v. Jones, 389 Pa. 339 (1957); Stevenson v. Pa. Sports and Enterprises, Inc., 372 Pa. 159 (1952).

---

[2] Plaintiff belonged to a "Mutual Benefit Association" to which she contributed $.60 per week.

We accept as necessary and reasonable plaintiff's bills for surgery, hospital care, doctors' visits and treatments, transportation, household help and orthopedic shoes. We further accept as accurate her claim to $5,000 lost wages. These items total approximately $8,000.

Additionally, plaintiff claims $67,000 as a present discounted value for loss of future earnings. This figure is reached by taking the total wages plaintiff would have earned had she worked until her mandatory retirement age of 70, and discounting that figure by six percent.

However, the standard for determining loss of future earnings is impairment of earning capacity, not earnings voluntarily foregone. Plaintiff is not entitled to compensation merely because she retired prior to the mandatory retirement age. It is plaintiff's burden to prove that the accident so impaired her ability to work that retirement was a necessary result of the accident. We agree that her ability to work was totally impaired until April 2, 1962. We do not agree, however, that her loss of earning capacity was to all intents and purposes total thereafter.

Plaintiff testified that as a result of the accident, she had difficulty walking and standing up and sitting down, and that she was always afraid of falling. However, her status as a payroll supervisor did not require physical movement. Her's was a desk job; whatever physical activity she might desire to undertake could have been adequately performed by any of the 20 employes directly under her supervision. During the almost three months that she returned to work following the accident, there were no complaints about her work, and plaintiff failed to show that her performance was in any way inadequate.

We deem it significant that plaintiff was 61 years old when she returned to work, and had spent 43

years working for John Wanamaker's. Furthermore, by April of 1962, plaintiff was irrevocably entitled to a pension of $161 per month plus Social Security, and was unmarried. In view of the financial ease with which plaintiff could retire, her record of 43 years of work, and her failure to show a diminution in her level of performance on the job, we conclude that plaintiff's retirement was not necessitated by her injuries but was the result of the inconvenience of continuing in a job which, perhaps due to her injuries, was no longer as enjoyable as before.

Plaintiff testified that her retirement was on the advice of her surgeon. This advice, however, is not inconsistent with our conclusion. Conceding that plaintiff was inconvenienced by her walking difficulty and, consequently, did not enjoy her work, and that she was 61 years old and solvent, competent advice even from a medical point of view, might have been to retire voluntarily. We are not saying that the inconvenience plaintiff suffered and still suffers when walking or standing is to be disregarded. To the contrary, it must be considered in determining plaintiff's recovery for pain and suffering. What we are saying is that proof of this inconvenience did not establish a significant reduction in earning capacity. Plaintiff has proved at best only a minor reduction.

The final element of plaintiff's recovery, pain and suffering, is, like damages for impairment of earning capacity, a matter of judgment as to what will fairly compensate plaintiff for her loss in dollars and cents. Suffice it to say that we do not consider the figure of about $8,000 for the past and future pain and suffering and loss of earning capacity insufficient as a matter of law.

ORDER

And now, to wit, December 11, 1967, plaintiff's exceptions and motion for new trial are dismissed. De-

fendant's motion for judgment n.o.v. is denied. Enter judgment on the verdict in plaintiff's favor in the amount of $16,000 against defendant, City of Philadelphia.