## Teagle v. Philadelphia, Appellant.

Argued May 1, 1968. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

396

*John M. McNally, Jr.,* Deputy City Solicitor, with him *Mansfield C. Neal,* Assistant City Solicitor, *Matthew W. Bullock, Jr.,* Second Deputy City Solicitor, and *Edward G. Bauer, Jr.,* City Solicitor, for City of Philadelphia, appellant.

*John Davidian,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, July 1, 1968:

A few minutes before midnight on July 2, 1961, Mrs. Beatrice Teagle, plaintiff here, while crossing Leland Street in Philadelphia, stepped into a hole in the street and sustained injuries. At the trial of the lawsuit instituted against the City of Philadelphia by the plaintiff, she testified that the hole into which she fell was 36 inches long, 2 feet wide, from 4 to 5 inches deep and was filled with black water. She explained that she could tell the depth of the hole by the wet mark on her stocking.

A Mrs. Dorothy Gross testified that on the night in question she was in her home, she heard a scream and ran out to the street where she saw two persons helping Mrs. Teagle out of the hole in which her foot was immersed. Mrs. Gross knew this defect in the pavement since she had reported it to the city authorities a year before.

The jury returned a verdict for the plaintiff and the defendant asks for judgment n.o.v. or a new trial "at least." Reason? A photograph of the offending hole introduced at the trial inexplicably showed a ruler stuck into it, its measuring indicating the surface of the fortuitous pond to be 1 1/2 inches above the supposed bottom. No one explained who inserted the ruler, no one testified as to whether the measuring rod was punched into the deepest part of the crater, its shallowest part, or somewhere in between. The photographer who took the picture was not called as a witness.

The defendant claims that the city should not be liable for a trivial depression in its public thoroughfares. The courts have not declared what absolute minimum depth is required in a fissure in the street to establish negligence on the part of the municipality for allowing it to remain unrepaired. Nor can there be a judicial pronouncement on the subject because obviously negligence invariably depends on a number of concatenating circumstances.

The defendant argues that the measure appearing on the ruler in the photograph "must be accepted as conclusive evidence of the true depth." This is an argument of less depth than that measured on the ruler. As already stated, the ruler does not specify that the depth of the concavity was uniform throughout its length of 36 inches and its breadth of 2 feet, nor that it was at the precise point where the ruler stood guard that Mrs. Teagle's foot disappeared into the murky hollow.

In addition, photographs cannot be said always to be an undeviatingly accurate reproduction of the scenes they presumably depict. It is said that figures do not lie, but that liars can figure. It can also be said that while photographs do not lie, there can be pictorial legerdemain which transforms a ramshackle house into

a mansion, a city dump into a panoramic vista, and an ugly duckling into a swan. Everyone has experienced the surprise of seeing for the first time a person whose photograph he had previously witnessed and noting how different the real person looks from the photographed individual. It is indeed the boast of some photographers that they can do more for a person with the camera than can be done for him or her in a barber shop, beauty shop, and/or a tailor shop.

In *Beardslee v. Columbia Township*, 188 Pa. 496, 502, this Court sagely observed: "Photographs are competent evidence, and when properly taken are judicially recognized as of a high order of accuracy . . . But in careless, or inexpert, or interested hands they are capable of very serious misrepresentation of the original."

Sometimes a photograph may be admitted for the limited purpose of showing "physical aspects" of a location rather than for the purpose of demonstrating that what is in the picture represents the situation at the time of the happening of the controverted episode. *Nyce v. Muffley*, 384 Pa. 107.

The plaintiff here was not present when the photographs were taken, she never saw the photographer, and, at the trial, did not vouch for the measurements supposedly indicated by the ruler. We repeat that there is not a syllable in the record to indicate that the plaintiff fell at that point in the photograph where the ruler lifted its measured head.

Nor did anyone come forward to say that the bottom of the ruler rested on terra firma. In fact, the photograph shows that it was held in position by a transverse beam, the latter extending from the curb to the adjoining pavement.

The trial judge presented both sides of the controversy to the jury in a charge luminous with clarity. He said, inter alia: "You have to consider all the

surrounding circumstances in regard to this hole. This is an alleged defect, and before liability attaches to the City, you should consider the depth of the hole, the size of an obstruction constituting the impediment, and consider whether all the particular facts of this case are sufficient to indicate that an unsafe condition was existing here, and that this was due to the negligence of the City of Philadelphia."

Nothing could be fairer. The jury took the photographs with them into the jury room, they studied them and concluded there was more credibility in the sworn testimony of the plaintiff and Mrs. Gross than in the unaccounted-for, unexplained, phantom ruler dipping its lower extremity into the dark depths of the haphazard puddle.

That is the whole case, and we see nothing in the appellant's argument of such depth that it submerges the jury's verdict into such a cavern of unreliability that it compels this Court to send the parties back for a retrial, when it is very clear that justice, wisely measured by the ruler of common sense, has been fairly done.

Judgment affirmed.

Mr. Justice ROBERTS concurs in the result.

Mr. Justice JONES dissents.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE O'BRIEN:

The majority opinion is directly in conflict with the case law as stated by this court. In *Bosack v. Pgh. Railways Company,* 410 Pa. 558 189 A. 2d 877 (1963), an irregularity existed in a street which the railway company, by virtue of its tracks, had the duty to maintain. Several cobblestones, located some five to eight feet from the ordinary pedestrian crossing, had sunk an inch or two below the level of the track. In re-

versing a verdict for the plaintiff, we held that, as a matter of law, the defect was so minor as not to be actionable. We there said: "Time and again our courts have held that an elevation, a depression, or an irregularity on a street or highway may be so trivial that courts, as a matter of law, are bound to hold that there was no negligence in permitting such depression or irregularity to exist . . ." It is true that no precise standards of triviality can be set up: "Bosack does not hold . . . that triviality is determined by the precise measurements of the irregularity in question. The thrust of that case is simply one of economic and physical practicality balanced against the need to protect against property damage and personal injury. Owners of large areas of land, such as railroads and municipalities, cannot reasonably be forced to police each and every square foot for minor depressions and protrusions." *Massman v. Phila.*, 44 Pa. D. & C. 2d 636 (1967), affirmed per curiam on the opinion of the court below, 430 Pa. 99, 241 A. 2d 921 (1968). Comparing the instant situation with *Bosack,* it would appear that a one and one-half inch depression in the middle of the block would be so trivial as to prevent a finding of negligence as a matter of law. The trial judge recognized this, for he charged the jury that if they found the hole to be only an inch and a half deep, they must find for the City.

However, the trial judge felt, and the majority now holds, that the depth of the hole was a question for the jury. Although plaintiff testified that the hole was four or five inches deep, she introduced two photographs, with rulers inserted in different parts of the hole, revealing that the depth was at most an inch and a half. In *Wright v. Pgh. Railways Co.,* 320 Pa. 40, 181 A. 476 (1935), the plaintiff's witness testified that the depression was from one and a half to two or three inches. This court affirmed the grant of judgment

n.o.v. after a verdict for the plaintiff, holding that accurate measurements taken by the railroad's civil engineer, showing the depressions to be less than a quarter of an inch, must prevail over the estimates of the plaintiff, who had ample opportunity to take accurate measurements. If defendant's measurements in *Wright* prevailed, then surely the situation where the plaintiff herself introduces the measurements is an *a fortiori* case.

I would reverse the judgment of the court below and enter a judgment n.o.v.