Pischke et vir., Appellants, *v.* Dormont Borough et al.

Argued May 5, 1943. Before KELLER, P. J., BALD-

206

RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Coleman Harrison,* for appellants.

*Samuel W. Pringle,* of *Dalzell, McFall & Pringle,* for appellee.

OPINION BY STADTFELD, J., July 21, 1943:

Catherine B. Pischke and Max J. Pischke, her husband, brought suit in trespass against the Borough of Dormont, defendant, which brought upon the record by writ of scire facias, as additional defendants, South Pittsburgh Water Company and Magdalena Bold, the property-owner. This suit was brought to recover damages for personal injuries sustained by Mrs. Pischke in a fall on the sidewalk in front of the premises 1495 Park Boulevard, Dormont Borough, Allegheny County, Pennsylvania, on the evening of October 3, 1940, between eleven and eleven-fifteen o'clock.

The jury returned a verdict in favor of the defendant, Borough of Dormont, and Magdalena Bold, one of the additional defendants, the property-owner in front of whose property the alleged accident occurred, and a verdict against the South Pittsburgh Water Company, the other additional defendant, in the sum of $400 in favor of Mr. Max J. Pischke and $800 in favor of Mrs. Catherine B. Pischke.

The court below, after argument before the court en banc, in an opinion by Soffel, J., entered judgment in favor of the South Pittsburgh Water Company, non obstante veredicto. From that judgment appeals were taken by plaintiffs.

Plaintiffs had resided at 1503 Park Boulevard, Dormont Borough, for over one year preceding the accident, which was the second house below Dell Avenue on the same side of the street. The wife plaintiff had only to cross the cartway of Dell Avenue and pass one other dwelling house to reach her residence, which was not over one hundred feet from the point of accident.

This sidewalk was about four and one-half feet wide, with a roughened or broomed cement surface; a stone curb about four inches wide extended along the outer edge, about on a level with the sidewalk. The sidewalk sloped downward toward Dell Avenue, the direction in which plaintiff was walking, at a grade of three to four and one-half per cent, and sloped from the property line toward the curb with a fall of one quarter inch in a foot, so that the curb side was one and one-eighth inches lower than the edge next to the property line. The center of defendant's six-inch iron curb box was located about twenty feet from the cartway of Dell Avenue, and about eighteen or nineteen inches in from the cartway of Park Boulevard. A gas curb box was located around three feet east or above the water box, and about sixteen or seventeen inches in from the cartway of Park Boulevard.

The top of the water box was on the same level with the cement around it but below the general level of the sidewalk. There was a gradual sloping of the cement all around the water box up to the general surface level, the area thus depressed, "saucer" shaped, having a diameter estimated from ten inches to fifteen inches. An engineer who made measurements for plaintiffs testified that the top of the water box was one and three-quarter inches below the general level of the side-

walk. Borough Engineer Vegeler and three other witnesses testified that the circular depression around the water box ran from nothing at the perimeter to one and one-quarter inches at the lowest point. This condition had existed for at least ten years, and all witnesses agreed that these curb boxes in their relation to the sidewalk were still unchanged at the time of the trial.

Plaintiff was the only witness who testified to the circumstances of the accident. She testified that she had rarely, if ever, walked along this sidewalk before that night, and had no knowledge of the presence of either of these curb boxes; that the arc light was burning at the corner of Dell Avenue 27.6 feet in a straight line from the water box and she could see the outline of the sidewalk, but the sidewalk was shaded by a large tree so that she could not see the curb boxes; that she knew she was walking in the center of the sidewalk when her foot went down in a hole and she fell on her knees; that after feeling around the iron curb box she went on home. Ten days later plaintiff went to the hospital for an operation on her foot, and did not make a daylight inspection of the place of her fall until seven or eight weeks after the occurrence, when she satisfied herself that she fell in the "hole" around the water box.

The case was submitted to the jury in a fair and comprehensive charge to which only a general exception was taken by any of the parties. The only assignment of error is the granting of the motion for judgment non obstante veredicto in favor of the South Pittsburgh Water Company.

The statement of claim charged negligence on the part of South Pittsburgh Water Company in permitting the construction of said water box so that it was imbedded below the level of the surrounding sidewalk, and in permitting "said improper construction or installation within the lines of the pavement" to exist

for a long period of time. According to the defendant's records, this water curb box was installed in 1912, at which time the property owners put in the service pipes; no repairs had been made since the sidewalk was laid, and there was no record of any repairs having been made by the water company. There was no evidence as to when or by whom the sidewalk was constructed. The brooming of the concrete fitted in the brooming generally on the sidewalk, with the brooming streaks continually to the edge of the iron curb box, indicating that the sidewalk is in the original condition in which it was constructed. The water company conceded its responsibility for the maintenance and repair of its curb box; but the top of the iron disc was reasonably level, with no sharp-edges of concrete around it, and there was no contradiction of Eld's (superintendent of appellee company) testimony that it was in proper condition and state of repair.

*Plaintiff conceded that she did not trip or slip and that there was nothing on the edge of the hole that caught her foot.* She further stated that the surface of the sidewalk sloped toward the box for seven or eight inches around it.

Mrs. Gigox, called by plaintiffs, stated that the water box had been in the same condition as long as she could remember, to-wit, for about ten years. Sergeant Wilson, testifying on behalf of the defendants, stated that the sidewalk had been in the same condition for twelve years.

On behalf of the defendant, William F. Vegeler, Borough Engineer, testified to an inspection made by him, and gave these measurements: he stated that the water box was 20.8 feet from the intersecting curb line of Dell Avenue; that the gas box was 24.4 feet from the intersecting curb of Dell Avenue. These curb boxes are 16 to 18 inches to the center of the castings from the outside curb line of the street. The concrete side-

walk is 4 feet, 6 inches wide, with a 4-inch curb. Mr. Vegeler made three measurements with respect to the depth of the depression. He testified that at the point nearest the curb the top of the water box is one inch below the general level of the sidewalk; that in the exact center of the box it is one and one-eighth inches below, and at the inner side next the house line, one and one-quarter inches below the plane of the sidewalk. He testified that the street slopes toward Dell Avenue on a four and one-half per cent grade, and that the sidewalk itself slopes from the property line toward the curb, with a fall of one and one-eighth inches toward the curb.

A. M. Cooper, civil engineer, called by the plaintiffs, made measurements in December, 1940, and shortly before the trial. He testified that there is a difference of only one and one-half inches in the position of the water box and the gas box with relation to the curb side of the walk. He stated that the curb box was one and three-quarter inches below the general level of the sidewalk. He agreed that the cement at the outer edge of the six-inch water box is on a level with the top of the box.

All witnesses agreed that there is no unevenness or difference in level between the six-inch curb box and the cement sidewalk around the edges; that there are no sharp edges or a hole in the sidewalk which would constitute a tripping hazard.

Max E. Miklancie, General Foreman of the South Pittsburgh Water Company, testifying on behalf of the defendant, introduced a sketch made by him on which the measurements as made by him were indicated. He testified that the water curb box has a diameter of six inches; that there is a circular depression about fourteen inches in diameter starting from nothing at the outside of this circle to a depth of one and a quarter inches at the lowest point. Mr. Sydow also testified

from actual measurements made by him that the maximum amount of depression below the general level is one and a quarter inches.

It thus is apparent from the testimony as cited that the plaintiffs' witness has indicated that the maximum amount of depression below the general level is one and three-fourths inches. The testimony of all of the witnesses establishes the fact that the concrete is dished to the casting which covers the water box, that the cement fits even with the cover of the box, and that there are no sharp edges.

The evidence discloses that this sidewalk was reasonably safe and that the condition existing in and about the water box did not create a hazard or danger to pedestrians, which was observable on reasonable inspection. There was no evidence that anyone else had fallen, or of any complaints made to either the borough or the water company.

The only question presented is whether plaintiff presented sufficient evidence of liability to permit the case to go to the jury, or whether the court below erred in entering judgment non obstante veredicto for defendant appellee. In considering the entry of the judgment, the court will view the evidence in the light most advantageous to plaintiffs, and will determine whether, under all the facts, the evidence was sufficient to permit the jury to find that defendant appellee negligently constructed or maintained its water box at the place of accident so as to cause plaintiff wife the injury complained of.

The court below concluded that the sidewalk with the water box was in a reasonably safe condition for pedestrian use.

The opinion in *German v. McKeesport City*, 137 Pa. Superior Ct. 41, 8 A. 2d 437, clearly sets forth the law applicable to suits arising out of falls sustained on sidewalks, in which President Judge KELLER, speaking

for this court, made the following statement: "......
To impose a burden of liability on either municipality
or property owner for an imperfection as common and
usual as that relied on to create liability in this case
would put an intolerable burden on the property owner
and the city and encourage carelessness by pedestrians
in the use of city streets. There are certain reasonable
risks that every person who uses city streets must as-
sume as inconveniences to be set off against the ad-
vantages of city life (*Morris v. Phila.*, supra), and this
case presents one of them." See also *Newell v. City
of Pittsburgh*, 279 Pa. 202, 123 A. 768; *Purcell v. Riebe*,
227 Pa. 503, 76 A. 212; *Reed v. Tarentum Borough*, 213
Pa. 357, 62 A. 928; *Rotsell v. Borough of Warren*, 10
Pa. Superior Ct. 283; *Foster v. West View Borough*,
328 Pa. 368, 195 A. 82; *Rushton v. Allegheny City*, 192
Pa. 574, 44 A. 249.

In *McGlinn v. Philadelphia et al.*, 322 Pa. 478, 186 A.
747, plaintiff testified that she was walking along the
west side of a street and that as she neared the curb at
the corner of an intersecting street, a delivery cart ap-
peared in her path; that she stepped aside to the left
and as she did so, her foot sank into something which
threw her down; that she reached back with her right
hand and her hand sank into something and she knew
that was what threw her. There was evidence that
there was a difference in the level of the ends of two
abutting curbstones of an inch and a half. In affirm-
ing the ruling of the lower court that plaintiff had
failed to prove a defective condition such as would give
rise to actionable negligence, the court held, inter alia,
"Our review discloses that appellant failed to make out
a *prima facie* case by establishing such negligence on
the part of the municipality as to charge it with lia-
bility. The standard of care to which a city is held in
the maintenance of its sidewalks is one of reasonable
safety. It is not an insurer of the absolute safety of

the pedestrians who make use of its sidewalks and streets: Burns v. City of Pittsburgh, 320 Pa. 92."

In *Davis v. Potter et al.*, 340 Pa. 485, 17 A. 2d 338, the evidence showed that on the south side of Federal Street, Philadelphia, beginning a foot or two east of Fifth Street and extending east about thirteen feet and from the houseline north about four feet, there was a general elevation in the pavement of from three-quarters of an inch to one and one-eighth inches, bordered by a flat strip or rim of iron. This area originally had been the site of a grating over a light well, but was later paved with cement. Plaintiff fell while walking on the pavement at a time when it was covered with ice and snow. She testified that her foot went down an incline and she fell; that, "my foot ...... just went off like a slant." In affirming the action of the lower court in directing a verdict for defendants, the court held: "...... The alleged defect was so trifling that it did not impose liability upon either the property owners or the city. Their duty was to maintain the pavement in a condition of reasonable safety, not to insure pedestrians traversing it against any and all accidents. An elevation, depression or irregularity in a sidewalk may be so trivial that the court, as a matter of law, is bound to hold that there was no negligence in permitting it to exist. Illustrations of the application of this principle are to be found in such cases as: Mason v. Philadelphia, 205 Pa. 177, 54 A. 773, Purcell v. Riebe, 227 Pa. 503, 76 A. 212; Newell v. Pittsburgh, 279 Pa. 202, 123 A. 768; Burns v. City of Pittsburgh, 320 Pa. 92, 181 A. 487; McGlinn v. Philadelphia, 322 Pa. 478, 186 A. 747; Hammer v. City of Philadelphia, 104 Pa. Superior Ct. 119, 158 A. 659; German v. McKeesport City, 137 Pa. Superior Ct. 41, 8 A. 2d 437."

Plaintiff's evidence did not establish that her fall was caused by the alleged depression and sloping of the sidewalk around the water curb box.

The question as to whether plaintiff sufficiently identified the water box as the place and cause of her injury is fully discussed in the able and comprehensive opinion of the trial judge. Plaintiff first said that she saw the hole after she fell, but later explained that she felt around with her hands but could see nothing that night of the water box. She did not actually see either the water box or the gas box until seven or eight weeks later. At that time, she said that she did not notice the other curb box much, because it was not below the surface of the sidewalk to her knowledge. She admitted that she did not know that there was another curb box there until later and insisted that the only way she could identify the water box was that it was over, not close to the curb. To quote from plaintiff's testimony: "Q. How do you know it wasn't the gas box? A. The reason I know that is the one is because I was walking in the center of the pavement; and that is the reason I know that is the one. I was walking in the center of the pavement. Q. If this box and the gas box were in the same line, if they were the same distance from the curb, you wouldn't know which one you fell in? A. I probably wouldn't; but I do know that that one is in the center of the pavement. Q. The one you fell in is in the center of the pavement? A. Yes, sir; almost in the center."

As a matter of fact, these two curb boxes were close to the curb, were about three feet apart and almost in line, the water box being only about two inches farther in from the curb than the gas box. Plaintiff further stated that when she looked eight weeks later, there was in her estimation only one hole, yet the photographs and evidence disclose that the gas box was below the level of the sidewalk with an almost vertical rise of the concrete around it, even though the top of the gas box was not as much below the general level of the cement as was the water box. Based apparently

on conclusions reached when she examined the sidewalk two months after the accident, plaintiff answered: "I don't think the gas box would cause me to fall. It looks high enough to me ......"

Where there are some conditions for which a defendant may be liable, and some for which it may not be responsible, a plaintiff must establish with reasonable certainty the defect forming the basis of the action: *Dunkerton v. North Braddock Borough et al.*, 330 Pa. 89; 198 A. 677. Plaintiff did not meet the burden resting upon her of showing with reasonable certainty that the depressed area around the water box was the causative factor in this accident: *Burns v. City of Pittsburgh*, supra; *Hulings v. City of Pittsburgh*, 150 Pa. Superior Ct. 338, 28 A. 2d 359; *Reddington v. Philadelphia*, 253 Pa. 390, 98 A. 601.

The accident occurred on a clear, dry night at a point about 27 feet from an arc light, and in front of the second dwelling above plaintiff's residence, which was on the same side of the street. In view of the absence of any tripping hazard, or obstruction, it seems inconceivable that plaintiff would have fallen if she was exercising due care. The arc light gave sufficient light to reveal the general surface of the sidewalk and to disclose the outline of the curb. Although denying that she had used this sidewalk, which led up to West Liberty Avenue, the main thoroughfare of the district, she must have been within fifty feet of it when she crossed Dell Avenue from time to time to go up to the street car. The alleged defect could not have been one to put defendant's meter reader on notice of any hazard to pedestrians, when it had completely escaped the observation of plaintiff, who had lived only two houses away from defendant's water curb box for over one year: *Good et al. v. Philadelphia et al.*, 335 Pa. 13, 15, 6 A. 2d 101.

The cases cited by appellants are readily distinguishable from the instant case. Under our view of the

case it is not necessary to discuss the question of contributory negligence on the part of Mrs. Pischke.

After a careful consideration of the entire record we are of the opinion that the evidence was wholly insufficient to support a finding of any negligent maintenance of its water box by the South Pittsburgh Water Company, and that plaintiff failed to prove that the slight unevenness around said water box was the place and cause of her injuries. We believe the able opinion of the trial judge fully supports the entry of judgment non obstante veredicto.

Judgment affirmed.