Magennis et vir. *v.* Pittsburgh, Appellant.

Argued March 20, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and JONES, JJ.

*Frederic G. Weir,* Assistant City Solicitor, with him *Anne X. Alpern,* City Solicitor, for appellant.

*Harry S. Kalson,* with him *S. Stephen Berger,* for appellees.

OPINION BY MR. JUSTICE JONES, May 21, 1945:

The plaintiffs, husband and wife, sued the City of Pittsburgh for damages for personal injuries sustained by the wife through the City's alleged negligent failure to maintain one of its streets in a reasonably safe condition. The jury returned a verdict for the plaintiffs upon which the learned court below entered judgment. The defendant appeals and assigns for error the lower court's refusal to enter judgment for the defendant n. o. v. on the ground that the plaintiffs were guilty of contributory negligence as a matter of law.

About a quarter to nine on the night of October 9, 1943, the plaintiffs set out from their home on Emerson Street in the East End, Pittsburgh, to walk to the East Liberty commercial district. Proceeding by well-lighted streets they reached Penn Avenue where they made several stops, the last being at a store on the corner of Penn Avenue and Osric Way. At that point they decided to return home by a different route using, as an alleged short cut, Osric Way, which runs from Penn Avenue to Shakespeare Street for a total distance of approximately two hundred feet.

Osric Way, which is only one block long, is little more than an alley. It has a cartway about fourteen feet wide, paved with asphalt, and a two foot cement sidewalk on the one side. It had but one street light, an overhead one

hundred watt bulb about midway in the block. Upon entering Osric Way at Penn Avenue (it was then about nine thirty P. M. and dark), the plaintiffs walked in the cartway and continued so to do. When within eighteen to twenty feet of the end of the Way, where it runs into Shakespeare Street, the wife plaintiff stepped in a hole in the street and fell, thereby suffering the injuries for which this suit was brought.

The plaintiffs testified that boxes of rubbish obstructed the sidewalk along Osric Way where they entered the Way from Penn Avenue, but there was evidence in the plaintiff's case, which was not controverted, that the obstructions on the sidewalk did not extend for more than half the length of the walk. In other words, from about the street light in the middle of the block to the Shakespeare Street terminus of Osric Way, the sidewalk was free from obstruction. There was testimony that the sidewalk sloped and was not smooth, but there was no evidence of any defects in it.

The plaintiffs further testified that they had not travelled Osric Way, prior to the night of the accident, for about two or three years and did not know of the hole in the street into which the wife stepped. They also testified that it was very dark at the time and place of the accident. According to the wife, she could see only "about two feet"; she did not see the hole in the street as she approached it because "It was too dark to see it; there was very little light there"; and she first saw it "when lying down there" after her fall. The husband testified that "it got completely dark" as they proceeded away from the street light in Osric Way; that "when you come beyond the light, the light gets dim, a small little light, high up, and not very strong;" that he could not see the street at all as they travelled toward the end of Osric Way; and that "If [he had known] it was as dark as it was [he] wouldn't have gone down that way."

The hole into which the wife plaintiff stepped was, laterally, about in the middle of Osric Way. It was twelve by fifteen inches in area and, although the testimony for the plaintiffs gave it an estimated depth of four to five inches, a special finding of the jury determined for the purposes of this case that the depth of the hole was "approximately 1⅞ inches" below the level of the surrounding unbroken paving.

The defendant's motion for judgment n. o. v. raised two questions, which are the questions here involved, (1) was the evidence of the defendant's negligence sufficient to carry the case to the jury and (2) were the plaintiffs guilty of contributory negligence. In its opinion denying the defendant's motion, the learned court below said that "The case was a close one as to the city's negligence . . . ." And, indeed it was.

A municipality is not required, where a sidewalk is available, to keep a street in as smooth condition for the convenience of possible pedestrians as it must keep a sidewalk intended for their use: cf. *Newell v. Pittsburgh,* 279 Pa. 202, 204-205, 123 A. 768; *Shafer v. Philadelphia,* 60 Pa. Superior Ct. 256, 258. Yet, a municipality is under no duty to maintain the surface of a sidewalk free from "slight irregularities". See *Van Ormer v. Pittsburgh,* 347 Pa. 115, 116, 31 A. 2d 503; *McGlinn v. Philadelphia,* 322 Pa. 478, 480, 186 A. 747; and *Emmey v. Stanley Company of America,* 139 Pa. Superior Ct. 69, 72-74, 10 A. 2d 795. What constitutes a slight irregularity, when the proper maintenance of the surface of a street is the subject of consideration, is of course to be determined in the light of the character of the traffic for which the use of the street is intended.

Here, the municipality's negligence, if it exists at all, must be found from the fact that it did not maintain the surface of the cartway of a street free from a defect that was little more than a break in the surface of the street paving and did not exist at an intersection or

other permissive place of pedestrian crossing. However, we need not consider whether the plaintiffs made out a case of negligence on the part of the defendant. Their own contributory negligence stands out so clearly that we think the defendant was entitled to a judgment in its favor on that ground.

Instead of walking on the sidewalk, when its use had become available to them, the plaintiffs in the instant case continued to walk in the cartway of the dimly lighted street after the darkness had become so great that it was impossible for them to see the street upon which they were walking. As their own testimony plainly discloses, and professedly without knowledge of the condition of the street, they walked on blindly without thought for any defects in the street that might possibly lay ahead of them. That was not an exercise of the care required of a pedestrian in the circumstances. See *Boyd v. Kensington Water Company*, 316 Pa. 522, 525, 175 A. 395; *Jones v. Counties Gas & Electric Co.*, 289 Pa. 128, 130, 137 A. 168. By continuing to walk in the street in the darkness they put it beyond themselves to be on the alert for any defects or other possible hazards in the street.

The plaintiffs' failure to use ordinary care under the circumstances was further intensified by their choice of a poorly lighted alley for their travel when there was readily available to them for their return home well-lighted and much-travelled thoroughfares with adequate facilities for pedestrian travel. See *Tharp v. Pennsylvania Railroad Company*, 332 Pa. 233, 235, 2 A. 2d 695; *Boyd v. Kensington Water Company*, supra; *Levitt v. B/G Sandwich Shops, Inc.*, 294 Pa. 291, 294, 144 A. 71. Cf. also *Henn v. Pittsburgh*, 343 Pa. 256, 258, 22 A. 2d 742. Certain it is that the plaintiffs' use of the alley as a possible short cut did not lessen the degree of care required of them.

To say that the plaintiffs made out a case free from contributory negligence would be tantamount to impos-

ing upon a municipality the liability of an insurer of a pedestrian's safety while walking upon a street, where a sidewalk is available, when admittedly he cannot see the surface of the street upon which he is walking. Such an imposition would be as unwarranted in the law as it would be unreasonable.

Judgment reversed and here entered for the defendant n. o. v.