Commonwealth of Pennsylvania, Department of Highways, Appellant, *v*. Eldridge.

Argued May 23, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

**392**

*Michael J. Stack, Jr.,* Special Assistant Attorney General, with him *J. Shane Creamer,* Special Assistant Attorney General, *John R. Rezzolla, Jr.* and *Alan Miles Ruben,* Deputy Attorneys General, and *David Stahl,* Attorney General, for Commonwealth, appellant.

*David F. Kaliner, Edward C. German,* and *LaBrum and Doak,* for appellees.

OPINION BY MR. JUSTICE EAGEN, September 25, 1962:

On January 7, 1959, about eleven a.m., a tractor trailer loaded with fuel oil collided with a section of the Pencoyd Viaduct, a bridge forming a part of the Schuylkill Expressway, in Montgomery County, Pennsylvania, causing substantial damage to the bridge construction. Alleging that the negligent operation of the tractor trailer was responsible for the accident, the Commonwealth of Pennsylvania, Department of Highways, instituted this action for damages against Eldridge, the operator; Trego, the owner of the tractor; and the Leaman Transportation Corporation, owner of the trailer.

After a trial, lasting two weeks, the jury returned a verdict for the defendants. Plaintiff's motions for judgment notwithstanding the verdict and a new trial were denied. From the judgment entered upon the verdict, the plaintiff appeals.

Plaintiff's contention is that trial errors require the grant of a new trial. Under the proof, the trial court could not legally have directed a verdict for the plain-

tiff, hence the merit of the motion for judgment n.o.v. need not detain us.

Salient portions of the testimony may be fairly summarized as follows: On the day in question, the tractor trailer, traveling in normal fashion in a westerly direction on the expressway, suddenly went out of control, ricochetted off the curbing and railing of the bridge, caught fire, causing substantial damage to the vehicle and the bridge. There were no known eyewitnesses to the incident except the operator of the vehicle.

The plaintiff offered in evidence the testimony of an officer of the Pennsylvania State Police, who arrived on the scene shortly after the occurrence. He described, the condition and position of the vehicle and the roadway; skid marks leading from the wheels of the truck eastward for approximately 200 feet; how he questioned the operator, Eldridge, who told him that about a mile east from the collision scene the truck suddenly pulled to the right as if it were going out of control; that the unit bumped up and down; that he did not stop or slow the vehicle to determine the cause of the pull; that the truck continued to travel at about 45 miles per hour and 10 or 15 seconds after entering the bridge, the truck again pulled to the right and despite efforts to control it, collided with the bridge curbing and slid down the walk until it came to a stop. This was the plaintiff's case as to liability and was sufficient to render the question of the operator's negligence one for the jury.

The defendants called as a witness the operator, Eldridge. He testified that just as the vehicle arrived on the bridge,[1] he felt a roll in the truck and it sort of bumped in the air; that he immediately brought it under control and about one-half of the distance down

---

[1] He admitted that this did not coincide with what he had told the investigating officer, but explained the discrepancy was due to his emotional excitement.

the bridge (the bridge is 1483 feet long), the wheels of the tractor again went out of control, pulled to the right, and mounted the curb (9½ inches high) causing the damage complained of.

Evidence was also introduced to show that the vehicle was last thoroughly inspected before the occurrence, on November 28, 1958, and found to be in apparent excellent operating condition; that after the accident an examination disclosed the steering apparatus to be locked fast in a left position and the right front spring hanger of the trailer broken and detached.

A metallurgical expert, who subsequently examined the right spring hanger of the trailer found the existence of a small piece of slag or foreign substance in the steel casting; he opined that this inadvertently became lodged therein at the time of construction when the molten steel was poured into the mold, thereby leaving a weakness; that the steel subsequently cracked so slightly and in such a manner that it would not be observable to the naked eye; and, that an impact with a bump in the road had caused the already weakened spring hanger to break through the outside flange; that the increased weight broke the inner flange, and all of this resulted in the front axle of the trailer shifting sideways causing the steering apparatus to go out of control.

Testimony was also introduced to show the existence of a "bump" in the roadway immediately at the easterly entrance to the bridge. This was described as a dip in the concrete slab approaching the bridge caused by a slight sagging after the pouring of the concrete at the time of construction.

The defense was, therefore, that the defendants were not responsible for the accident because it was primarily caused by the existence of a latent defect or weakness in the right spring hanger of the trailer which broke due to the sudden impact of the wheels with the

bump in the roadway; which bump was permitted to exist for a considerable period of time due to the carelessness of the highway department.

A study of the record indicates that a new trial is required. Several times in the instructions to the jury, the trial court emphasized that if the highway department were guilty of negligence that contributed to the occurrence, this, in itself, required that the verdict of the jury be for the defendants. Not in a single instance was it stated, or even hinted, that the burden of proving the existence of such negligence was upon the defendants. Under the singular facts this case presents, this was a significant omission. If the issue of contributory negligence were in the case, the facts required clear instructions on this point. As stated in *Pleasant v. Carr*, 387 Pa. 634, 635, 130 A. 2d 189 (1957) : " 'It is a primary duty of the trial judge—a duty that must never be ignored—in charging a jury to clarify the issues so that the jury may comprehend the questions they are to decide. Such clarification is impossible without clear instruction as to the burden of proof, the shifting of the burden in certain states of the record, and if plaintiff has offered prima facie proof of what he has pleaded, the duty then devolving on the defendant to come forward with evidence.' " Also, the trial court failed to explain to the jury what facts constituted contributory negligence under the circumstances of the case. See, *Hess v. Mumma*, 136 Pa. Superior Ct. 58, 7 A. 2d 72 (1939).

However, and more importantly, the proof did not warrant a finding of negligence upon the part of the plaintiff. The testimony was to the effect that the roadway, as it approached the bridge, ran at a three and one-half per cent downgrade. The slope of the bridge was at the same level. An expert witness testified that several elevation readings indicated that immediately before reaching the bridge deck, there was

a flattening out of the grade, "it became more horizontal" and continued this "little drop off" for two feet at the expansion joint. In another instance, he said that upon the approach slab to the bridge, the grade dropped from three and one-half per cent to one-half of one per cent for a distance of five feet, and then returned again to the three and one-half per cent grade. This evidence was pertinent, under adequate instructions, for the jury's consideration in determining whether or not the defendants were free from negligence in that the alleged latent defect in the spring hanger of the trailer broke and caused the accident, but, in itself, was not sufficient to support a finding of negligence upon the part of the highway department. Certainly, the department is not guilty of negligence in permitting a slight uneven grade to exist in one of its roadways. This would constitute an unreasonable and impractical burden. Under the facts presented, it would in effect require the department to foresee and guard against the use of the highway involved and others under its domain by a motor vehicle with an inherent, unusual and latent defect. The instructions as to contributory negligence were thus prejudicial and reversible error.

The law does not require a municipal corporation to maintain its public roads in perfect condition. It is not an insurer: *Koch v. White Haven Borough,* 360 Pa. 627, 63 A. 2d 1 (1949). The standard is reasonable safety. See, *Newell v. Pittsburgh,* 279 Pa. 202, 123 A. 768 (1924) ; *Aloia v. City of Washington,* 361 Pa. 620, 65 A. 2d 685 (1949). Also, an act cannot be negligent unless the harm is foreseeable to the class to which the complaining party belongs: *Helm v. South Penn Oil Company,* 382 Pa. 437, 114 A. 2d 909 (1955).

Judgment reversed and a new trial ordered.