## Bosack *v.* Pittsburgh Railways Company, Appellant.

Argued March 20, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Earl W. Brieger,* with him *Parker, Evashwick & Brieger,* for appellant.

*Frank J. Kernan,* with him *P. J. McArdle,* for appellee.

Opinion by Mr. Justice Benjamin R. Jones, April 16, 1963:

This is an appeal in a trespass action for personal injuries from a judgment entered upon a verdict in favor of Cecelia Bosack (appellee) and against Pittsburgh Railways Company (appellant).

The accident which resulted in this litigation occurred at approximately 7:30 a.m. on October 2, 1956— "a nice clear day"—when appellee fell while crossing East Ohio Street near its intersection with East Diamond Street in Pittsburgh. In the center of East Ohio Street—which is approximately 42 feet wide and runs generally east and west—are two railway tracks owned by appellant which tracks are flanked on both sides by lanes for vehicular traffic. The vehicular portion of East Ohio Street is paved with asphalt while that portion of the street immediately adjacent to and between the several rails is paved with cobblestones. East Diamond Street—approximately 32 feet wide—runs generally north and south and intersects East Ohio Street. At this point, East Ohio Street—on the north side of which is the Carnegie Library and on the south side of which is the North Side Market—is generally subject to heavy vehicular traffic but at the time of the accident such vehicular traffic was practically nonexistent.

At 7:00 a.m. on the date of accident appellee, having completed her duties as a waitress in a restaurant, was en route to do some shopping at the North Side Market. At a point approximately five or eight feet west of the pedestrian crosswalk located at the intersection of East Ohio and East Diamond Streets, appellee left the sidewalk on the north side of East Ohio Street and started to cross to the south side of that street. When appellee had traversed approximately 24 feet of East Ohio Street she came to the fourth or most southerly rail and when she "got to the fourth track,

there was a hole there and [her] foot slid in" and she fell, sustaining personal injuries.

Appellee instituted a trespass action in the Court of Common Pleas of Allegheny County against the appellant. In her complaint appellee averred that appellant was negligent in the following respects: (a) in permitting the pavement adjacent to the rail of its track to remain in a sunken condition; (b) in failing to maintain its tracks and right-of-way in a reasonably safe condition for pedestrian traffic; (c) in failing to barricade the rail when appellant knew or should have known of its dangerous condition; (d) in failure to warn of the exposed rail; (e) in disregarding appellee's safety; (f) in failing to exercise due care under the circumstances. After a trial before the Honorable F. G. WEIR and a jury, the jury returned a verdict in favor of appellee and against appellant in the amount of $25,479.40. Appellant's motion for judgment n.o.v. having been refused, judgment was entered on the verdict and this appeal was taken.

The sole question on this appeal is whether, under the facts of record, appellant is entitled to judgment n.o.v. Appellant takes the position that it is entitled to judgment n.o.v. because (1) there was insufficient evidence upon which to predicate a finding of negligence; (2) appellant had neither actual nor constructive notice of the defect in the street; (3) appellee was guilty of contributory negligence as a matter of law.

In passing upon the question raised on this appeal we must view the evidence in the light most favorable to appellee: *Pugh v. Ludwig,* 409 Pa. 517, 519, 186 A. 2d 911[2]; *Lescznski v. Pittsburgh Railways Co.,* 409 Pa. 102, 105, 185 A. 2d 538.

The sole witnesses to the happening of this accident were one S. E. Fairtrace and appellee.

Fairtrace, standing on East Ohio Street near an outdoors newsstand about 170 feet west of the point

of the accident, saw appellee fall as she reached "the second set of rails" and he went to her assistance and found appellee "laying there, and her right foot was near the rail, and her left foot was doubled up under her." Fairtrace testified: that appellee had reached the "second set of rails" and "the last rail over she had caught her toe in the hole that was there and fell" and it "was inside of the two rails"; that "[appellee's] foot was near the hole" which he described as "around two inches on two or three stones, then it sloped up sort of, a gully like"; that the "cobblestones naturally slipped down towards the rail. The cobblestones were inside the rail, and outside the—the inside were the stones going crossways, three or four of them on the ends were deep down in" and that part that was two inches deep was "right up against the rail". On cross-examination, Fairtrace stated that, judging from "a one and a half inch mark on the toe of [appellee's] shoe", appellee must have tripped on the rail; that the depressed condition of the cobblestones was "about one and a half or two inches" over a width of "twelve to fifteen, maybe eighteen inches long."

Appellee testified simply that when she reached the fourth track (obviously the fourth or most southerly rail of the second set of tracks) there "was a hole there, and [her] foot slid in".

Viewing the testimony in the light most favorable to appellee, certain facts appear clearly established: (a) that appellee was crossing not at the ordinary and usual pedestrian crossing but at a point some five to eight feet west thereof; (b) that the accident occurred at a point adjacent to the fourth or most southerly rail; (c) that at the point of accident several cobblestones over a width of fifteen to eighteen inches had sunk to a depth of one and one-half to two inches; (d) that appellee's foot caught in the rail at this point.

Appellee, a pedestrian, elected to cross East Ohio Street at a point other than the established street crossing located at the intersection of East Ohio and East Diamond Streets. While appellee was not restricted to the use of the established street crossing, yet, when she elected to cross the street at a point other than the usual crossing she was required to have a reasonable excuse for so doing: *Watts v. Borough of Plymouth*, 255 Pa. 185, 99 A. 470. The reasonableness and validity of her excuse for not utilizing the usual pedestrian crossing was a question for determination by the jury and we must assume that the jury, by its verdict, found justifiable appellee's crossing at the point she elected to do so.

It was the duty of the railway company to maintain and keep in a reasonable state of repair the spaces between and the area immediately adjacent to the rails of its tracks. Such duty of maintenance and repair of the street on the part of the railway company is akin to the duty of a municipality to maintain and repair its streets and the liability of a railway company to persons injured by defects in a street or highway is no higher nor greater than that which the law imposes upon the municipality itself: *Sanford v. Union Passenger Railway Co.*, 16 Pa. Superior Ct. 393. In the maintenance and repair of such areas neither the municipality nor the railway company is an insurer: *Commonwealth of Pennsylvania, Department of Highways v. Eldridge*, 408 Pa. 391, 396, 184 A. 2d 488; *Aloia v. City of Washington*, 361 Pa. 620, 622, 65 A. 2d 685; *Koch v. White Haven Borough*, 360 Pa. 627, 630, 63 A. 2d 1; *Davis v. Wilkes-Barre*, 286 Pa. 488, 499, 134 A. 105.

In *Henn v. Pittsburgh*, 343 Pa. 256, 258, 22 A. 2d 742 (p. 258), this Court said: "A city [the railway in the instant case] cannot be expected to maintain its . . . street crossings in a perfectly level condi-

tion, and where the defect consists of some slight variation between the elevation of adjoining paving blocks, flagstones or curbstones . . . no liability is imposed upon the municipality [on the railway in the instant case] : [citing cases]." A railway company, not being an insurer, is required only to exercise reasonable care in maintaining the street areas which it has the duty of maintaining and repaving. The duty which the law imposes upon a railway in such a situation is not to keep the streets or highways *completely* free of *any* defect or irregularity but *reasonably* free of such irregularity or defect as would make likely an injury to a pedestrian crossing said street or highway. To hold otherwise would impose upon a railway an impossible, impractical and unjustifiable burden: *German v. McKeesport City,* 137 Pa. Superior Ct. 41, 50, 8 A. 2d 437.

Time and again our courts have held that an elevation, a depression or an irregularity on a street or highway may be so trivial that courts, as a matter of law, are bound to hold that there was no negligence in permitting such depression or irregularity to exist: *Koch v. White Haven Borough,* supra; *Van Ormer v. Pittsburgh,* 347 Pa. 115, 31 A. 2d 503; *Henn v. Pittsburgh,* supra; *Davis v. Potter,* 340 Pa. 485, 17 A. 2d 338; *McGlinn v. Philadelphia,* 322 Pa. 478, 186 A. 747; *Pischke v. Dormont Borough,* 153 Pa. Superior Ct. 205, 33 A. 2d 480. Examples of elevations, depressions or irregularities upon which courts have held no liability could be predicated are: *McGlinn v. Philadelphia,* supra; (1½″ difference between the levels of two abutting curbstones) ; *Newell v. Pittsburgh,* 279 Pa. 202, 123 A. 768 (1½″ between adjoining ends of flagstones at street crossing) ; *Foster v. West View Borough,* 328 Pa. 368, 195 A. 82 (uneven, rough, unpaved step between curb and sidewalk 2′ wide and 2″ to 4″ lower than sidewalk level) ; *Harrison v. Pittsburgh,* 353 Pa. 22, 44 A. 2d 273 (manhole cover which projected 2″

above surrounding sidewalk) ; *Magennis v. Pittsburgh,*
352 Pa. 147, 150, 42 A. 2d 449 (hole 1⅞″ below level
of pavement and 12″ x 15″ in area termed by this Court
"a defect that was little more than a break in the sur-
face of the street paving"). See also: *Wright v. Pitts-
burgh Rys. Co.,* 320 Pa. 40, 181 A. 476; *German v. Mc-
Keesport City,* supra. *Culver v. Lehigh Valley Transit
Co.,* 322 Pa. 503, 186 A. 70, relied upon by appellee, pre-
sents a factual situation inapposite to that in the case
at bar.

An examination of the record presented in the case
at bar clearly indicates that the depression or irregu-
larity of the cobblestones was of such nature as to bring
it within the orbit of our decisions which hold that
such defect or irregularity, as a matter of law, does not
constitute actionable negligence. During the course of
the trial, appellant, ostensibly for the purpose of show-
ing the location of the accident, introduced in evidence
certain photographs. Appellee now claims that such
photographs were admitted without limitation as to
use and that such photographs showed the condition
of the defect or irregularity in the street as it existed
at the time of the accident. The witness Fairtrace on
examining the photographs and noting certain depres-
sions or irregularities in the pavement stated "this hole
would be closer to it [in appearance]" and ". . . that
[certain holes shown on the photographs] look similar
to what it looked like" when the accident happened.
Accepting appellee's contention that these photographs
were admitted at trial without limitation as to use
and further accepting the testimony of Fairtrace that
the defects or irregularities which appear on these
photographs were similar to the defect or irregularity
which caused appellee to fall, an examination of such
photographs clearly fortifies our opinion, reached after
an examination of the record, that the appellee failed
to prove any defect or depression in the surface of the

street or any elevation of the rail sufficient upon which to predicate negligence. In our view, giving to the appellee the benefit of all favorable testimony and inferences therefrom, it would be completely unreasonable, impractical and unjustifiable to hold appellant liable for the existence of any such defect or irregularity in the street or elevation of the rail. Appellee has failed to establish any actionable negligence upon appellant's part and the court below should have entered judgment n.o.v.

In the light of the conclusion reached, we need not consider the questions of notice, either actual or constructive, to appellant, of the existence of the defect or irregularity in the street or the elevation of the rail, or of appellee's contributory negligence.

Judgment reversed and judgment n.o.v. directed to be entered.

Mr. Justice MUSMANNO dissents.