IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lizbeth Irizarry, : 
            Appellant : 
             : 
    v. :   No. 1371 C.D. 2021
             :   Submitted: December 9, 2022
City of Reading : 

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge
             HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                    FILED: April 18, 2023

Lizbeth Irizarry (Irizarry) appeals from the order of the Court of Common Pleas of Berks County (trial court) granting the City of Reading's (City) motion for summary judgment (Motion) and dismissing Irizarry's complaint (Complaint) with prejudice. On appeal, Irizarry argues the trial court erred in determining there were no genuine issues of material fact regarding several elements of her (a) claim of negligence against the City and (b) asserted exception to governmental immunity. Upon review, we reverse.

## I.    Background

On October 13, 2018, Irizarry filed her Complaint against the City in the trial court. Reproduced Record (R.R.) at 3.[1] Irizarry alleged she slipped and fell on

---

[1] For future reference, Appellant's counsel is directed to Pa.R.A.P. 2173, which directs parties to include a lowercase "a" following the page numbers in the reproduced record.

September 18, 2017, in a pothole in Court Street, which the City owns and is responsible for maintaining. *Id.* at 5. Irizarry further alleged the City's negligent conduct permitted this dangerous condition to exist within Court Street, thereby causing her serious and permanent personal injuries. *Id.* at 6.

In her deposition, Irizarry stated that the incident occurred when she was returning to her car, which she had parked on Court Street, from the Berks County Domestic Relations Office. R.R. at 134-35, 139. Irizarry described the incident by stating "when I went to put my foot to get into the vehicle, my foot twisted. I fell. . . . I held myself with my hand, which I had just had surgery for carpal tunnel. I tried to hold myself with the hand that I had just had surgery. I still fell to the ground." *Id.* at 136. Irizarry took photographs of the area of Court Street where she claims she twisted her left foot and then fell. *Id.* at 138, 140. Irizarry did not report the incident to the City until October 16, 2017. *Id.* at 155.

Irizarry admitted that she did not look at the ground before she put her foot down, stating "one just walks, and one doesn't look or, you know, pays attention or has to, you know, look every time one steps." R.R. at 141. Irizarry also explained that she was wearing a brace on her left hand and was carrying her phone and papers in her right hand at the time of her fall. *Id.* at 140-42.

Irizarry deposed Patricia Beisswanger (Beisswanger), who was the City's risk and safety coordinator in September 2017. R.R. at 222-24. Beisswanger acknowledged the City was responsible for maintaining Court Street in the area in question. *Id.* at 228. However, Beisswanger admitted the City did not have a street or sidewalk inspection program in 2017 and had not had one for "many, many years." *Id.* at 225. Beisswanger reviewed Irizarry's photographs and admitted they show an area where "the macadam is wearing out" and where the street has "[a]ge

2

deterioration." *Id.* Beisswanger completed a claim report with Irizarry on October 16, 2017. *Id.* at 226. Thereafter, Beisswanger informed members of the City's streets division about the report and asked them to send a crew to fix any hazards in the area. *Id.* at 227. Beisswanger remembers driving by the location of Irizarry's fall the next day, October 17, 2017, and seeing a crew repairing Court Street. *Id.* at 228.

Irizarry also deposed Christopher Elia (Elia), who was a first level supervisor for the City's streets division. R.R. at 208-09. In September 2017, Elia supervised the City's "snow plowing, leaf collection, street sweeping, [and] road maintenance." *Id.* at 209. Elia admitted the City was responsible for maintaining the area of Court Street at issue and for removing leaves in the area. *Id.* at 210. Elia also admitted the streets department did not have an inspection process to proactively identify potholes or deteriorated pavement in 2017. *Id.* In addition, Elia admitted the City does not require streets department employees to report road maintenance issues, even if they observe those issues in the course of their employment. *Id.* at 212. Instead, the City typically repaired deteriorated streets after it received complaints from the public. *Id.* The first complaint Elia knew about in the area of Irizarry's fall was Irizarry's complaint. *Id.* After he received Irizarry's complaint on October 16, 2017, Elia had the streets department repair the area on October 17, 2017. *Id.* at 211.

Irizarry also submitted the expert report of Julius Pereira III (Pereira). Pereira reviewed the Complaint, the City's responses to Irizarry's interrogatories, transcripts of the above-described depositions, and color photographs of the area in question. R.R. at 250. Pereira then opined: (a) "[i]t is reasonably foreseeable that people exiting and entering vehicles parked on . . . Court Street would step onto and walk around the vehicle on the asphalt pavement in the street," (b) the uneven pavement

3

adjacent to the curb caused Irizarry's fall, (c) the "area of the broken and missing asphalt is approximately 3" wide and 6" long where the top layers of the asphalt pavement has deteriorated and is missing," (d) "[p]eople stepping down from the sidewalk on the Court Street pavement may not notice the uneven condition and inadvertently step onto it," (e) "[a]sphalt deterioration is a slow process . . . allow[ing] those responsible for maintaining the street . . . the opportunity to inspect the conditions . . . and to identif[y] the deteriorated conditions," (f) "[a]ny reasonable inspection of the street by a qualified individual, in the interest of facility safety, would have identified the asphalt was deteriorated resulting in an uneven condition," and (g) "[t]he [City]'s failure to maintain the subject asphalt pavement . . . violated the requirements of the [City's] Property maintenance code," "did not comply with reasonable references for maintaining properties safe[ly]," and "perpetuated conditions that are dangerous to normal pedestrian use." R.R. at 253-55.

After the parties completed discovery, the City filed its Motion, arguing Irizarry "failed to establish grounds for a cause of action (i.e., negligence by the City); and . . . failed to overcome the statutory presumption of governmental immunity." R.R. at 14. Regarding her negligence claim, the City alleged Irizarry did not present evidence it "breached its duty to maintain the street in a reasonably safer [sic] manner for its intended use," or that the "allegedly dangerous condition was the actual cause of her injuries." *Id.* at 15. Regarding governmental immunity, the City alleged Irizarry failed to plead or prove any exception to governmental immunity because she failed to establish (a) grounds for her negligence claim, (b) the existence of a dangerous condition, (c) the condition created a foreseeable risk of injury, and (d) the City had actual or constructive notice of the condition in sufficient time to act to protect against the condition. *Id.* at 16-18.

4

The trial court, by order filed November 16, 2021, granted the City's Motion and dismissed Irizarry's Complaint with prejudice. Trial Ct. Order, 11/16/21. Irizarry appealed, and the trial court issued an Opinion in Support of its Order pursuant to Pennsylvania Rule of Appellate Procedure 1925(a). Trial Ct. Op., 2/25/22. In its opinion, the trial court determined Irizarry could not establish the City breached its duty to maintain Court Street "in a reasonably safe condition for traveling and parking."[2] *Id.* at 4. The trial could also determined Irizarry could not establish her fall was caused by a condition of the City's street.[3] The trial court then opined that its application of governmental immunity was "a legal issue and is decided by the judge, not the fact-finder. Thus, this court found that governmental immunity applies in the case at bar." *Id.* at 7. In evaluating exceptions to

---

[2] To support this determination, the trial court provided:

> The hole that plaintiff claims caused her to fall is, at most, the normal deterioration of a curb. Pedestrians do not normally walk on the curb or gutter; instead, they walk on the pavement. According to plaintiff's own photographs, she is not pointing to a pothole. In fact, the condition, which she cites, is so small that plaintiff had not even noticed it until a paramedic pointed it out. Plaintiff did not even feel it when she fell. Her vehicle, as seen in her second picture, was parked close enough to the curb that she could have gotten her foot trapped between the car and the curb and fell for that reason.

Trial Ct. Op., 2/25/22, at 4-5.

[3] To support this determination, the trial court provided:

> Plaintiff knows nothing about the reasons for her accident. She testified, "I don't remember well." She further admits she did not look where she was putting her foot. In essence, she has no idea why she fell because she was not looking where she stepped. She latched onto the paramedic's observation of a depression. Without his observation about the curb, plaintiff would not have even thought that it had caused her fall. The paramedic, however, did not witness plaintiff's fall and therefore only guessed as to what had contributed to or caused plaintiff to fall. Plaintiff has the burden of proof to prove this condition caused her fall, and she cannot do so. Even assuming arguendo that defendant was negligent in its upkeep of the curb, plaintiff has not demonstrated that the failure was a causative factor in her accident.

Trial Ct. Op., 2/25/22, at 5 (citation to the record omitted).

5

governmental immunity, the trial court concluded that the condition Irizarry complained of "does not rise to a 'dangerous condition.'" *Id.* at 6, 7-8. The trial court also determined there was no evidence "plaintiff's injuries were reasonably foreseeable," or that the City had actual or constructive notice of the allegedly dangerous street condition. *Id.*

On appeal, Irizarry asserts the trial court did not analyze the facts she presented under the proper standards, and that she established facts sufficient for each element of negligence and the streets exception to governmental immunity. *See generally* Appellant's Br. As a result, she asserts the trial court erred in granting the City's Motion.

## II. Analysis

When reviewing the trial court's decision to grant summary judgment, we consider

> this Court's standard of review is de novo and our scope of review is plenary. A trial court should grant summary judgment only in cases where the record contains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The moving party has the burden to demonstrate the absence of any issue of material fact, and the trial court must evaluate all the facts and make reasonable inferences in a **light most favorable to the non-moving party**. The trial court is further required to resolve any doubts as to the existence of a genuine issue of material fact against the moving party and "may grant summary judgment only where the right to such a judgment is clear and free from doubt." This Court has held that the summary judgment standard that a trial court must view the facts, and all reasonable inferences, in a light most favorable to the non-moving party "clearly includes all expert testimony and reports submitted by the non-moving party or provided during discovery; and, so long as the conclusions contained within those reports are sufficiently supported, the trial judge cannot sua sponte assail them in an order and opinion granting summary judgment." An appellate court may reverse a grant of summary judgment only if the trial court erred in its application of the law or abused its discretion.

6

*Bourgeois v. Snow Time, Inc.*, 242 A.3d 637, 649–50 (Pa. 2020) (internal citations omitted and emphasis added).

## A. Negligence

The trial court's first reason for determining Irizarry could not establish her negligence claim is that she could not show the City breached its duty to adequately maintain Court Street. Irizarry, however, provided Pereira's expert report, wherein Pereira opined "[t]he City of Reading's failure to maintain the subject asphalt pavement . . . violated the requirements of the [City's] Property maintenance code," "did not comply with reasonable references for maintaining properties safe[ly]," and "perpetuated conditions that are dangerous to normal pedestrian use." R.R. at 255. Rather than evaluating this evidence in the light most favorable to Irizarry, as the non-moving party, the trial court assailed Pereira's expert opinion with its own interpretation of the photographs of the location in question.[4] Thus, the trial court erred in its application of the law. *See Bourgeois*, 242 A.3d at 650.

The second reason the trial court determined Irizarry could not establish her negligence claim is that she could not show her injuries were caused by a condition of Court Street. Irizarry, however, testified to placing her foot in a hole in Court Street, falling, and sustaining injuries. Pereira opined that this hole caused Irizarry's fall and injuries. Rather than evaluating this evidence in the light most favorable to Irizarry,[5] the trial court, again, applied its own interpretation of the facts and assailed

---

[4]  For the trial court's analysis, see footnote 2, *supra*.

[5]  For the trial court's analysis, see footnote 3, *supra*. As a specific example of the trial court's failure to view the evidence in a light most favorable to Irizarry, the trial court quoted Irizarry saying "I don't remember well" for the purpose of showing she "knows nothing about the reason for her accident." *See* Trial Ct. Op., 2/25/22, at 5. However, Irizarry made this statement in response to a question about whether she tried to open her car door before she fell. Her complete answer was "I don't remember well. I don't remember well. I remember putting my foot down, and then I fell. Once I fell - - once I fell is when I opened the door." *See* R.R. at 141.

7

Pereira's expert opinion. Thus, the trial court failed to properly apply its summary judgment standards and erred in its application of the law.

Viewing the evidence presented in the light most favorable to Irizarry, and accepting Pereira's supported opinion, we conclude Irizarry presented sufficient evidence to survive summary judgment. Irizarry and Pereira can testify to facts which would be sufficient, if believed, to establish the City was negligent in its maintenance of Court Street, causing Irizarry's fall and injuries. At this stage of the proceedings, the City's contrary evidence shows there are genuine issues of material fact, which render summary judgment inappropriate. The trial court, therefore, erred in granting summary judgment on the grounds that Irizarry could not establish the elements of her negligence claim.

## B. Governmental Immunity

The trial court also granted summary judgment because it determined Irizarry could not establish an exception to governmental immunity. Pursuant to Sections 8541 and 8542 of the Judicial Code, local agencies, like the City, are not "liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person," unless the injured party can establish she qualifies for an exception to immunity. 42 Pa.C.S. §§ 8541, 8542. "[G]iven the expressed legislative intent to insulate political subdivisions from tort liability[,]" the exceptions to immunity "must be narrowly interpreted." *Mascaro v. Youth Study Ctr.*, 523 A.2d 1118, 1123 (Pa. 1987).

To qualify for an exception to governmental immunity, all injured parties must meet two general requirements. First, they must establish they would be able to recover damages "under common law or a statute creating a cause of action if the injury were caused by a person not having [immunity]." 42 Pa.C.S. § 8542(a)(1).

8

Second, injured parties must establish "[t]he[ir] injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties . . . ." 42 Pa.C.S. § 8542(a)(2).

If injured parties can establish these two general requirements for an exception to governmental immunity, then they must also show that their injury occurred as a result of one of the specific acts enumerated in Section 8542(b) of the Judicial Code. 42 Pa.C.S. § 8542(b). The enumerated act that could apply in this case is commonly known as the "streets exception" to governmental immunity. 42 Pa.C.S. § 8542(b)(6). Under the streets exception, injured parties must establish their injuries were caused by

> [a] dangerous condition of streets owned by the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa.C.S. § 8542(b)(6)(i).

We begin our analysis by examining whether Irizarry meets the two general requirements for an exception to governmental immunity. The trial court determined Irizarry could not establish these two general requirements because she could not show she would have a right to recovery if the City did not have immunity or that the City's negligent actions caused her injury. As fully discussed above, we have concluded Irizarry's evidence, if believed, can establish each of the elements of a negligence claim, including causation, against the City. Therefore, genuine issues of material fact exist regarding each of the first two general requirements for an exception to governmental immunity.

9

Next, we turn to the specific requirements of the streets exception to governmental immunity. The trial court determined Irizarry could not invoke the streets exceptions because she could not establish: (a) the existence of a dangerous condition, (b) a foreseeable risk of injury, or (c) the City had actual or constructive notice of the condition.

### 1. Dangerous Condition

Chapter 85 of the Judicial Code, which addresses sovereign and governmental immunity, does not define a dangerous condition. Similarly, our existing case law does not provide an explicit definition of what constitutes a dangerous condition. Chapter 85 does, however, indicate that potholes can create a dangerous condition of a roadway. *See* 42 Pa.C.S. § 8522(b)(5) (creating an exception to sovereign immunity when certain additional conditions are met for "[a] dangerous condition of highways under the jurisdiction of a Commonwealth agency created by potholes or sinkholes or other similar conditions created by natural elements"). This is consistent with the ordinary use of dangerous, which Black's Law Dictionary defines as "perilous," "hazardous," and "unsafe." Black's Law Dictionary 494 (11th Ed. 2019).

Despite the potential for potholes to create a dangerous condition of a roadway, the trial court determined the deterioration shown by Irizarry did not rise to a dangerous condition as a matter of law. In reaching this determination, the trial court cited the Pennsylvania Supreme Court's decision in *Bosack v. Pittsburgh Rys. Company*, 189 A.2d 877, 880 (Pa. 1963), for the proposition that when a defect in a roadway "consists of some slight variation between the elevation of adjoining paving blocks, flagstones or curbstones, no liability is imposed on the municipality." Trial Ct. Op., 2/25/22, at 6.

10

In *Bosack*, a pedestrian was crossing a two-lane, paved street between five and eight feet outside a pedestrian crosswalk. *Id.* at 878-79. The two lanes of this street were separated by two railway tracks, which were paved with cobblestones. *Id.* at 878. The pedestrian suffered injuries when she tripped on a one and one-half or two inches deep by twelve to eighteen inches long depression in the cobblestones adjacent to one of the railway tracks. *Id.* at 879. Our Supreme Court determined this constituted a trivial defect as a matter of law, as follows:

> A railway company, not being an insurer, is required only to exercise reasonable care in maintaining the street areas which it has the duty of maintaining and repairing. The duty which the law imposes upon a railway in such situation is not to keep the streets or highways completely free of any defect or irregularity but reasonably free of such irregularity or defect as would make likely an injury to a pedestrian crossing said street or highway. To hold otherwise would impose upon a railway an impossible, impractical and unjustifiable burden . . . .

*Id.* at 880 (citation omitted).

In *Massman v. City of Philadelphia*, 241 A.2d 921, 923 (Pa. 1968), the Supreme Court explained "[t]he test established in *Bosack* is that a paving defect is trivial when 'it would be completely unreasonable, impractical and unjustifiable' to hold defendant liable for its existence." *Id.* (quoting *Bosack*, 189 A.2d at 881). Accordingly, the Supreme Court in *Massman* upheld a finding of negligence where there was a one and one-half inches deep, six inches wide, and twenty-eight inches long crack in a sidewalk. *Id.* Under the facts presented in *Massman*, the Court determined "it was for the trier of fact to determine whether or not [the] defendant exercised reasonable care in maintaining the premises in safe conditions. We cannot say as a matter of law that to require the City of Philadelphia to repair cracks of this size in the walking lanes of City Hall courtyard imposes an impractical and unjustifiable burden." *Id.*

11

Consistent with *Massman*, the Superior Court recently observed that "Pennsylvania courts have largely avoided assigning any dividing line between trivial and non-trivial defects, whether along the railways or on streets or sidewalks, and whether on municipal or commercial properties." *Reinoso v. Heritage Warminster SPE LLC*, 108 A.3d 80, 87 (Pa. Super. 2015) (en banc).[6] Likewise, our Court has recognized that although "a sidewalk defect may be so trivial that a court must hold, as a matter of law, that the property owner was not negligent in allowing its existence," "there is no mathematical or bright-line rule to be used to determine 'the depth or size of a sidewalk depression necessary to convict an owner of premises of negligence in permitting its continued existence.'" *Shaw v. Thomas Jefferson Univ.*, 80 A.3d 540, 542-43 (Pa. Cmwlth. 2013) (citations omitted). Instead, "[t]he surrounding circumstances must be examined in each case." *Id.* at 543 (citation omitted).

Here, the surrounding circumstances include the City's admission that pavement was deteriorated in the area in question as well as Irizarry's expert's testimony that this condition was dangerous to normal pedestrian use and caused Irizzary's fall. Viewing this evidence in the light most favorable to Irizarry, she has presented sufficient evidence to establish a genuine issue of material fact as to whether the condition was dangerous. The trial court, similar to its determinations on Irizarry's negligence claims, erred in its application of law by failing to view the evidence presented in the light most favorable to Irizarry.

---

[6] "In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018) (citation omitted). Although we are not bound by the Superior Court's decision in *Reinoso*, its review of the law in this area is comprehensive and persuasive.

12

## 2. Foreseeable Risk of Injury

Pereira opined "[i]t is reasonably foreseeable that people exiting and entering vehicles parked on . . . Court Street would step onto and walk around the vehicle on the asphalt pavement in the street." R.R. at 253. He also opined that the condition of the pavement caused Irizarry's fall. *Id.* Despite this evidence, the trial court determined "there is **no evidence** that plaintiff's injuries were reasonably foreseeable." Trial Ct. Op., 2/25/22, at 6 (emphasis added). Once again, the trial court was not viewing the evidence in a light most favorable to Irizarry. This was an erroneous application of the law. Irizarry presented sufficient evidence to survive summary judgment on this issue.

## 3. Actual or Constructive Notice

The trial court determined Irizarry did not present any evidence to establish the City had actual notice of the deteriorated pavement of Court Street. Upon review, we agree. Specifically, Beisswanger testified the City did not receive any complaints about the area in question until Irizarry filed a complaint, and Elia testified the City did not receive any complaints about the area in question before Irizarry's fall. Irizarry did not present any contrary evidence regarding actual notice. Accordingly, Irizarry cannot rely upon actual notice, but must instead establish the City "could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition." 42 Pa.C.S. § 8542(b)(6)(i).

Pereira opined "[a]sphalt deterioration is a slow process . . . allow[ing] those responsible for maintaining the street . . . the opportunity to inspect the conditions . . . and to identif[y] the deteriorated conditions[,]" and "[a]ny reasonable inspection of the street by a qualified individual, in the interest of facility safety, would have

13

identified the asphalt was deteriorated resulting in an uneven condition." R.R. at 255. Despite this evidence, the trial court determined "there was **no evidence** that defendant had constructive notice of the condition." Trial Ct. Op., 2/25/22, at 8 (emphasis added). Likewise, the City asserts Irizarry did not present facts "upon which a jury could conclude that the City was placed on constructive notice of the complained-of condition." Appellee's Br. at 16.

"Constructive notice requires that the dangerous condition be apparent upon reasonable inspection." *Dep't of Transp. v. Patton*, 686 A.2d 1302, 1304 (Pa. 1997). "The question whether a landowner had constructive notice of a dangerous condition . . . is a question of fact. As such, it is a question for the jury, and may be decided by the court only when reasonable minds could not differ as to the conclusion." *Id.* at 1305. "If there is any dispute created by the evidence, the court is not permitted to decide the issue." *Id.*

We recognize that what constitutes a "reasonable inspection" is not the same for a municipality as it is for a residential landowner. Many municipalities have miles upon miles of roadways to maintain, and our Court has recognized frequent inspections of those roadways are not practical. *See Gramlich v. Lower Southampton Twp.*, 838 A.2d 843, 847 n.3 (Pa. Cmwlth. 2003) (explaining "it is unreasonable to require a municipality to patrol its streets every day for possible defects created by its citizens that may subject it to liability"). Our Court has not, however, *completely absolved* municipalities from a responsibility for conducting reasonable inspections.

Since the matter before us is at the summary judgment stage, we need not delve into analyzing what could constitute a reasonable inspection for a municipality. Instead, we must only determine if reasonable minds could differ

14

about the issue. Here, the City admitted it did not inspect its roadways at all during the relevant time. The City also admitted its own street department employees – who are responsible for road maintenance – are not responsible for reporting maintenance issues they observe in the course of their employment. Pereira opined that roads deteriorate over time, giving municipalities time to identify and fix deteriorated areas. Under these facts, a reasonable mind could determine the City had constructive notice because the dangerous condition would have been apparent upon reasonable inspection. Likewise, a reasonable mind could accept the City's expansive responsibilities and limited resources and determine the City did not have constructive notice because it acted reasonably in not inspecting Court Street. Since reasonable minds could differ, the trial court erred in deciding the issue. *See Patton*, 686 A.2d at 1305.

### III.    Conclusion

Viewing the evidence presented in this matter in the light most favorable to Irizarry, genuine issues of material fact exist regarding each element of Irizarry's negligence claims, as well as each element of the streets exception to governmental immunity. The trial court erred in not viewing the evidence in a light most favorable to Irizarry. Therefore, we reverse the trial court's order granting the City's Motion and remand for further proceedings.

_____
STACY WALLACE, Judge

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lizbeth Irizarry,               :
           Appellant     :
                               :
     v.                    :   No.  1371 C.D. 2021
                               :
City of Reading            :

# **O R D E R**

AND NOW, this 18th day of April 2023, the order of the Court of Common Pleas of Berks County, Pennsylvania, entered November 16, 2021, granting summary judgment is **REVERSED**, and the case is **REMANDED** for further proceedings.  Jurisdiction relinquished.

_____
STACY WALLACE, Judge